GILLESPIE, ADMINISTRATOR OF HALL, *et al. vs.* REBECCA E. CRESWELL *et al.—December* 1841.

Upon a bill filed to sell real estate for the payment of debts, upon the ground of insufficiency of the personal estate of the deceased to satisfy them, the acknowledgment of the heir at law and devisee of the debtor, that "it was a debt he would have, and intended to pay," is sufficient to remove the bar of the statute.

The statute of limitations runs against a claim or debt up to the time it is exhibited or filed in Chancery.

Where a claim arises upon a bond of indemnity, it is not barred until after the principal debtor and creditor have been both dead twelve years, or the thing in action has been above twelve years standing.

A party who relies upon a mere contract of indemnity has no right of action until he has been made to pay money. It is by payment he is damnified, and then his cause of action arises.

Promissory notes, dated 10th March, 1814, at sixty days, were discounted for the use and accomodation of the second endorser, the prior parties being only securities. Suits were brought upon them by the holder against the securities in 1815, and judgments obtained against them in September 1816. They were paid on the 20th August, 1818, more than three years after the maturity of the notes. The second endorser died in April 1814. *Held*—

That as respects the accommodation endorser, the running of the statute was suspended by the suit brought against him, and the judgments obtained

thereon, and that the payment made by him on the 20th August, 1818, by coercion of law and under *fi. fa.*, gave him a right to be re-imbursed out of the real estate of his principal, upon a bill filed by him in 1819 against his heirs, and to which the statute of limitations opposed no bar.

It does not necessarily follow that one who advances money for a debtor to pay his creditor, and in fact pays the money to the creditor for the debtor, is either a purchaser of the debt or a mere volunteer. Upon the fact appearing, that the debtor had agreed to execute a mortgage for his security, and that the judgments against him should be assigned by way of security to the party making the advance, he would be considered as an agent in making the payment.

A mere volunteer, without any authority, undertaking to discharge a debt, does not succeed to the rights of the party whose debt he so discharges.

Where a security paid the debt of his principal under judgment, by money borrowed from a third party, to whom the creditor assigned the judgment against the security for his indemnity, a bill filed by the security against his principal (now deceased) to subject his real estate to sale for the payment of debts, will arrest the running of the statute of limitations both as respects the security and the third party, who only became a party to the cause in equity by amendment, some years after the filing of the original bill.

The right of set-off is reciprocal, and mutual claims, and such as are in the same right, can alone be set-off.

A security who pays the debt of his principal at par in depreciated bank notes, can only recover the amount given for them, and in the absence of such proof, the payment will be estimated at the current market price at the time of the payment.

Securities in a bond who pay off the debt, may recover separately the sums respectively paid by them, and the evidence which one of them may have to rebut the plea of limitations, does not necessarily enure to the benefit of the other surety.

APPEAL from Chancery.

A bill was filed on the 16th February, 1819, by *Samuel C. Hall* and *Robert Evans* on behalf of themselves and such other creditors of *John Creswell the elder*, as might come in, against his executor, heirs and devisees, to subject his real estate for sale, on the ground of the insufficiency of his personal estate to pay his debts. *Hall* claimed a debt due him arising from his endorsement of notes for *Creswell's* accommodation; and *Evans* as his security on a sheriff's bond entered into by *Creswell*. Various answers were filed, disclaiming knowledge of the complainant's claims, when on the 9th June, 1823,

*David Reynolds*, as executor of *William Byson*, filed a claim dated 5th October, 1811, signed by *John Creswell*, admitting a balance due *W. Byson* of $62.38.

The complainant *Hall*, on the 9th June, 1823, filed certified copies of the docket entries of two *fi. fa's*. issued at September term, 1818, in the case of the President and Directors of the *Elkton Bank of Maryland*, endorsees of *John Creswell*, against *Samuel C. Hall*, for $4,000 and $2,760, with interest, "returned levied, and satisfied plaintiff." Judgment had been recovered as above for $4,000 and $2,760, on the 9th September, 1816, with interest until paid, the records of which were also filed.

The death of the original complainants being suggested by petition, their administrators were made parties by bill of revivor.

On the 10th March, 1825, *Philip Thomas* filed his petition and claim. At April term, 1820, the *President and Directors of the Elkton Bank* sued out their *fieri facias* against him, and sold his property for $464.25. A short copy of the judgment obtained against him at *September* term, 1816, was also filed by consent, and also the bond of indemnity of *John Creswell the elder* to *Philip Thomas*, dated 15th February, 1813, agreeing to indemnify him for any responsibility, or any debts or sums of money which he may be liable to pay on account of his being security for *William Baxter*, late cashier of the *Elkton Bank of Maryland*. *Philip Thomas* also filed his account against *John Creswell*, deceased, for $464.25, with interest from 1st April, 1820, until paid, and also the bond of *William Baxter*, with *John Creswell* and *Philip Thomas* as his sureties, to the bank aforesaid, dated 20th April, 1811, conditioned for the faithful discharge of *Baxter's* duty as cashier, which were admitted by consent.

On the 6th May, 1829, an amended bill was filed by the representatives of *S. C. Hall* and *Robert Evans*, and also by *Washington Hall* and *Philip Thomas, David Reynolds*, executor of *William Byson*, and the administrator of *Reuben Reynolds*, against the original parties, for the same objects as those

claimed in the original bill. This bill was answered and limitations relied on. A commission was issued and a great variety of proof taken. Upon the death of *John Creswell the younger*, his widow *Rebecca E. Creswell*, was made a party. The administrators of *Reuben Reynolds*, who had been a co-security with *Robert Evans*, first advanced their claim in 1829, upon the filing of the amended bill. The claim of *Robert Evans* and the evidence to remove the bar of limitations, are both stated in the opinion of this court, with so much of the proof as relate to the questions decided.

On the 5th May, 1840, the Chancellor (BLAND,) dismissed the bill, being of opinion that from the pleadings, petitions, exhibits and proofs in the cause, that all the claims against the real estate of *John Creswell the elder*, deceased, are barred by the statute of limitations.

From this decree the complainants appealed to this court.

The cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY and CHAMBERS, J.

By O. SCOTT and A. C. MAGRUDER for the appellants.

The appellants, to avoid repetition, adopt the statement of appellee, except so far as it is contradicted or explained by the following:

The notes were endorsed by *Samuel C. Hall* for the accommodation of *Creswell*. He was the mere security of *Creswell* in procuring the money from the *Elkton Bank*. The money had been borrowed a long time before, and the notes in question were renewals of former notes.

There is no evidence that the notes were paid in the depreciated paper of the *Elkton Bank*. *Samuel C. Hall* paid the bank on the 20th of August, 1818, and received an assignment of the claim, and on the 24th of November, 1818, assigned the same to *Washington Hall*. *Creswell* entered upon the lot demised and occupied the same.

That the claim of *Evans*, for money paid for *Creswell* as his surety, is clearly proved, and seems to be admitted by the statement of appellee.

The claim of *Philip Thomas* is proved by the affidavits of *Nesbit* and *Patten*, and the affidavits and extracts are in evidence by agreement.

That *John Creswell the younger* acknowledged the debt of *Evans*, so as to avoid the plea of limitations. The weight of the evidence is against the acknowledgment being made when *Creswell* was a minor. The evidence is contradictory about *Creswell's* age, but all agree that he was at latest of age in February 1823. The proof shews the acknowledgment to have been made when *Creswell* was getting money from *Stiles* to pay *McGrundy*, on the 21st June, 1823.

The appellants will contend—

1. That the personal assets of *Creswell* were insufficient to pay his debts.

2. That the claims of *Hall*, *Evans* and *Thomas*, are established by the proof.

3. That the said claims are not barred by limitations.

4. That the claim of rent as a set-off against the demand of *Hall*, ought not to be allowed.

5. That the claim to set off the judgment against *Samuel C. Hall* as surety for *Lightner*, ought not to be allowed.

6. That the claim to reduce the demand of *Hall*, under the pretence that the money was paid in depreciated bank paper, ought not to be allowed.

J. JOHNSON and ALBERT CONSTABLE for the appellees.

In this case a bill was filed by *Samuel C. Hall* and *Robert Evans* on the 16th of February, 1819, against the devisees and executor of *John Creswell the elder*, for the purpose of subjecting the real estate of the deceased, to the payment of his debts.

The bill alleged that the complainants had been compelled to pay, as *Creswell's* sureties, about $5,000, and were liable to pay further sums; *Hall*, as endorser upon sundry accommodation notes to the amount of $4,000, and as surety in his bond as sheriff; and that *Evans* had paid about $1,000, as surety in his bond as sheriff—this bond was dated on the 9th of October, 1810.

The will of *Creswell* filed with the bill is dated on the 17th of February, 1814, and proved on the 18th of April of the same year. Answers were filed to this bill by the several defendants; that of the executor (*Joseph Cowden*,) claiming sundry credits, and some of the defendants pleading the act of limitations.

On the 9th of June, 1823, *David Reynolds*, executor of *William Byson*, became a party to the bill by petition, and filed his claim, being a memorandum, dated 5th of October, 1811, purporting to be signed by *Creswell*, acknowledging an indebtedness to *Byson* of $62.38.

On the 5th of November, 1823, the appellants, *George Gillespie*, administrator of *Samuel C. Hall*, and *James Evans*, executor of *Robert Evans*, became parties to the bill in place of the original complainants, whose deaths they suggested; and on the 10th of March, 1825, *Philip Thomas*, another of the appellants, became a party by petition, exhibiting therewith the evidence of his claim. This evidence consists of the bond of one *William Baxter*, with *Creswell* and *Thomas* as his sureties, dated 20th of April, 1811, conditioned for the faithful performance of *Baxter's* duties as cashier of the *Elkton Bank;* and an engagement under seal, on the part of *Creswell*, to indemnify *Thomas* as such surety, dated the 15th of February, 1813; and proof that the property of *Thomas* had been sold upon a writ returnable to April term 1820, to the amount of $464.25, at the suit of the Bank, issued upon a judgment against him, recovered upon the aforesaid bond.

The appellants, *Gillespie*, administrator of *Samuel C. Hall*, and *James Evans*, executor of *Robert*, on the 6th of May, 1829, asked and obtained leave to file an amended and supplemental bill, and accordingly on the same day a bill was filed in the name of the petitioners, and *Washington Hall*, *Philip Thomas*, *David Reynolds*, executor of *William Byson*, and *John Briscoe* and *Henrietta M.*, his wife, as administrators of *Reuben Reynolds*. This bill alleges that *Washington Hall* has an interest in the claim of *Samuel C. Hall*, and that *Briscoe* and wife, as administrators of *Reynolds*, have an equal

interest with *Robert Evans* in the claim filed by him; that the claim of *Samuel C. Hall* was founded upon two promissory notes, dated the 10th of March, 1814, amounting together to $6,760, of which one *John Reynolds* was the maker, and the said *Samuel C. Hall* and *Creswell* the endorsers, and discounted at the *Elkton Bank* for *Creswell's* use, and upon which, after *Creswell's* death, the said *Samuel C. Hall* was compelled to pay, on the 20th of August, 1818, the sum of $3,959.93, the executor of *Creswell* having paid the balance; and that the claim of *Evans* and *Reynolds* arose from their having, as his sureties in his bond as sheriff, paid to *John Patridge* and *J. Cosden* the sum of $806.59, of which they had received from *Creswell's* executor $497.44.

After some of the defendants had answered this bill, a bill of revivor was filed on the 9th of August, 1831, suggesting the death of *John Creswell*, junior, one of the defendants to the original bill, and making *Rebecca E. Creswell*, his executrix and devisee, a party. An answer was filed by the said *Rebecca* on the 3rd of December, 1831, in which she puts the complainants to the proof of their claims, sets up large demands due from *Samuel C. Hall* to the elder *Creswell*, and pleads limitations, and insists upon the lapse of time as a bar to all the claims set up in the bill.

A great deal of evidence was taken under the several commissions which issued in the cause, by which it appeared, that two notes drawn by *John Reynolds*, payable to, and endorsed by *Samuel C. Hall* and *John Creswell*, and dated the 10th of March, 1814, payable sixty days after date, one for $4,000 and the other for $2,760, were discounted at the *Bank of Elkton*, and the proceeds received by *Creswell*. These notes, became due on the 9th and 12th May, 1814. And it will appear from the evidence of *James Sewell*, that *Washington Hall*, on the 21st August, 1818, paid the balance due upon them, being $3,960.01; a variety of payments having been previously made by *Cowden*, the executor of *Creswell the elder*.

Under a commission which issued on the 11th of October, 1834, the record of a judgment recovered by *Cowden*, admin-

istrator of *Creswell*, against *Samuel C. Hall*, was returned; and under a subsequent commission, the defendants filed a lease from the elder *Creswell* to *Samuel C. Hall, James Magraw* and *John Frey*, of three lots of ground, dated 26th March, 1814, for ninety-nine years, at $70 per annum, and offered evidence of the enjoyment of the premises by the lessees, and proved by the record of *Frey's* discharge, that he had taken the benefit of the insolvent laws.

It was in proof on the part of the defendants, that the credit of the *Elkton Bank* was greatly impaired in the year 1818, when the money was paid by *Hall;* that its paper was at a depreciation at least equal to fifty per cent.; and *James Sewell,* the president of the Bank at the time, says his impression is, that *Hall* made the payment in the depreciated paper of the Bank, and that the Bank always received its own paper at par.

The claim of *Samuel C. Hall*, it has been stated, was founded on notes which became due on the 12th of May, 1814, and on which he, or *Washington Hall*, paid to the Bank $3,960.01 on the 21st August, 1818.

The claim of *Robert Evans*, the other original complainant, and of *Reuben Reynolds*, whose administrators became parties by the supplemental bill filed on the 6th of May, 1829, rests upon the fact of their having been sureties in the bond of *Creswell the elder*, as sheriff of *Cecil* county, dated 9th of October, 1810, upon which judgments were recovered for the use of *John Patridge* and *Jeremiah Cosden* in 1814, and upon which they (*Evans* and *Reynolds*,) paid certain sums in the years 1815 and 1816.

The claim of *David Reynolds*, as executor of *Byson*, who became a party in June, 1823, rests upon an alleged acknowledgment of *Creswell's* without seal, dated 5th October, 1811.

The claim of *Philip Thomas*, who became a party on the 10th of March, 1825, is founded upon a bond of indemnity, dated the 15th February, 1813, the condition of which was, that *Creswell* would indemnify *Thomas*, as surety with him *Creswell*, for one *Baxter*, in his bond as cashier of the *Elkton Bank*, dated the 20th April, 1811, upon which *Thomas* was

sued, and to pay the claim his property was sold to the amount of $464.25, upon a *fi. fa.* to April term, 1820.

Under a commission which was returned in June 1834, there were returned short copies of the judgments of the *Elkton* Bank, against the executor of *Creswell*, recovered upon the before mentioned notes, and an assignment of the judgments and of the whole claim of the Bank founded thereupon, to *Samuel C. Hall*, dated 20th August, 1818. And also an assignment by the said *Samuel C. Hall* to *Washington Hall*, in consideration of the sum of $3,959.93, paid by the latter to the former, of all the assignor's claim and demand to the said judgments, and the monies secured thereby. This latter assignment is dated on the 24th November, 1818, and it follows therefore, that at the time the bill was filed, which was on the 16th February, 1819, *Samuel C. Hall*, one of the only two parties, (*Robert Evans* being the other,) in whose names it was filed, had parted with his claim against *Creswell's* estate, and had of course no interest in it.

A great deal of evidence was taken under a commission which was returned in March 1839, in reference to the age of *John Creswell the younger*, according to which, as the appellees insist, it clearly appears that he attained the age of twenty-one years on the 19th February, 1823, and consequently if the appellants have succeeded in showing, that he made any acknowledgment which would take the claim of *Robert Evans* out of the operation of limitations, such acknowledgment was made when he was a minor.

By agreement of parties the auditor stated an account subject to exceptions. In this account the claim founded upon the notes is marked No. 1, and stated as a claim due *Gillespie*, administrator of *Samuel C. Hall*, and *Washington Hall*. It is stated, first, as if the $3,960.01 paid by *Hall* on the 21st of August, 1818, had been paid in cash worth par, and credited only with the judgment in favor of *Creswell's* executor against *Hall*, and one-third of the money due upon the lease to *Hall*, *Magraw* and *Frey*.

The same claim is then stated upon the presumption that the

payment was made in the paper of the Bank, purchased at a discount of fifty per cent., and the defendants are credited with the amount of the aforesaid judgment and the whole sum due upon the lease. The other claims are stated as preferred by the parties.

Exceptions were filed by the parties, the defendants insisting in their exceptions, 1st, that all the claims were barred by limitations. 2nd, that they were not proved. 3rd, that *Hall's* name being before *Creswell's* upon the notes, the latter could not be liable to the former in respect thereof. 4th, that in no event could *Creswell's* estate be made responsible beyond the actual amount paid by *Hall* for the paper in which he made the payment to the Bank. 5th, that there was no evidence to show that the notes were made for the accommodation of *Creswell.* 6th and 7th, that defendants were entitled to be credited with the whole amount due upon the lease.

The complainants in their exceptions only object to a credit being given for the judgment and money due upon the lease, and insist upon the allowance of the claim filed by *Thomas.*

Much of the proof, to which reference has been already made, was taken after the auditor's accounts were filed, and the case coming on to be heard, the Chancellor, by his decree of the 5th of May, 1840, dismissed the bill, being of opinion that all the claims against the real estate of *John Creswell the elder,* were barred by limitations.

An appeal was taken by the complainants from this decree. In the argument it will be contended by the appellees—

1. That if the appellants, *Gillespie,* administrator of *Samuel C. Hall,* and *Washington Hall,* have any claim, it is only for one-half the nominal sum paid to the Bank, subject to be reduced by the amount of the judgment in favor of *Creswell's* executor, and all the arrearages due upon the lease.

2. That the said claim is barred by limitations, and was so barred at the time the payment is said to have been made by *Hall* to the Bank; such payment therefore does not revive the claim as against *Creswell's* estate, and especially as *Creswell* had died before the payment was made.

3. That if, as the proof of *Sewell* shows, *Washington Hall*, who was not a party to these notes, paid the money, then there can be no recovery against the estate of *Creswell*, he having no right in that way to make himself a creditor, by paying claims to which he was a stranger, and which, as against *Creswell's* estate, were barred at the time of such payment.

4. That with reference to this claim of *Hall's*, the bill should be dismissed—1st, because there is nothing to show that *Samuel C. Hall*, in whose name it was filed, ever paid one dollar—and 2nd, because if he ever had a claim, he had assigned it to *Washington Hall* for value, in November, 1818, before this bill was filed, and consequently he could institute no such proceeding.

5. That *Washington Hall* became a party to the cause for the first time, by the amended bill filed in May 1829; and if he could thus associate himself with a party who had no interest when the proceedings were commenced in his name, still with regard to *Washington Hall*, limitations ran until the amended bill was filed, which was eleven years after the payment of the money to the Bank.

6. That the claims of *James Evans*, executor of *Robert Evans*, and *Briscoe* and wife, administrators of *Reuben Reynolds*, are barred by limitations, whether those claims are founded upon the sheriff's bond, dated 9th of October, 1810, or upon the payment of the money in 1815.

7. That the claim of *David Reynolds*, executor of *William Byson*, is not proved; but if proved is barred by limitations.

8. That the claim of *Philip Thomas* is barred by limitations, nor is it sufficiently proved.

If however these objections are overruled, then the appellees will insist, that as the claims of the creditors who filed the bill are barred, and the bill as to them must be dismissed; that the whole proceedings, and all the petitions founded upon it, must share the same fate.

Buchanan, C. J., delivered the opinion of this court.

The original bill was filed by *Samuel C. Hall* and *Robert Evans* on the 16th of February, 1819, in behalf of themselves

and other creditors who might become parties, to subject the real estate of which *John Creswell the elder* died seized to sale, for the payment of their respective claims against his estate, the personal property being insufficient.

It has been urged in argument by the counsel for the appellees, that at the time of filing the bill the claims of the appellants were barred by the act of limitations, which is pleaded and set up in the answers; and on that ground the bill was dismissed by the Chancellor. It has therefore, on this appeal, become necessary to examine that, among other questions presented by the record.

*Evans* had been surety for *Creswell* in a bond executed by him as the sheriff of *Cecil* county, dated the 9th of October, 1810. On that bond suits were brought against him and *Reuben Reynolds*, a co-security, and judgments rendered, which were discharged by them, one on the 8th August, 1815, by *Evans*, and the other by *Reynolds* and *Evans* on the 5th April, 1816. The amount of the payments by *Evans* of his proportion, being one-half of the whole amount paid, constitutes his claim, which, as the bill was filed on the 16th of February, 1819, more than three years after the payments, except what was paid on the 5th of April, 1816, would have been barred by the act of limitations. But it appears from the proof in the cause, that *John Creswell the younger*, the son and devisee of *Creswell*, the principal in the bond, acknowledged the existence of the claim of *Evans* after he had attained the age of twenty-one, saying it was one that he would have to pay, and intended to pay; which acknowledgment took the case out of the statute of limitations.

*Philip Thomas*, another of the creditors, was, together with *Creswell the elder*, a surety for *Baxter* in a bond given by him to the *President and Directors of the Elkton Bank*, on the 20th of April, 1811, as the cashier of that institution; and took from *Creswell*, on the 15th of February, 1813, a bond of indemnity. The *President and Directors of the Elkton Bank* instituted a suit against him, and obtained a judgment on the 11th of September, 1816, upon which a *fi. fa.* was sued out,

and his property sold to satisfy the judgment, on the 1st of April, 1820. On the 10th of March, 1825, he exhibited his claim, and filed a petition to be let in as a creditor under the bill then depending; and as his claim commenced on the 1st of April, 1820, and was only exhibited on the 10th of March, 1825, more than three years afterwards, it would, by the established rule and practice in the Chancery Court of this State, adopted by this court, "that the statute of limitations runs against a claim or debt up to the time it is exhibited," have been barred, but for the bond of indemnity executed to him by *Creswell*, which saves it. By that act it is provided, that no bond, &c., shall be good and pleadable, &c., after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action above twelve years standing. Here the debt or claim, the thing in action, had been standing only from the 1st of April, 1820, when *Thomas*, as surety for *Baxter*, was made to pay the money, until the 10th of March, 1825, when the claim was exhibited—less than five years. Before he had been made to pay the money he had no right of action, no claim for which he could have sued upon the bond of indemnity. It was by his having been made to pay as surety for *Baxter*, that he was damnified. It was then that the "debt or thing in action" first arose, against which the act of limitations only began to run from that time, and from that time he had twelve years allowed him for bringing suit on the bond of indemnity.

It appears that on the 10th of March, 1814, two notes, negotiable at the *Elkton Bank* and payable sixty days after date, were drawn by *John Reynolds* and endorsed by *Samuel C. Hall* and *John Creswell*. Those notes it is in proof were discounted for the benefit and accommodation of *Creswell*, the second endorser, who received the proceeds and paid the discounts, and that *Hall*, the first endorser, was only his security. On these notes suits were brought in the court of *Cecil* county, by the *President and Directors of the Elkton Bank*, on the 8th of August, 1815, against *Hall*, and judgments rendered on the 2nd of September, 1816. Judgments were also rendered in

suits upon the same notes against *Joseph Cowden*, executor of *Creswell*, one at the *September* term, 1816, and the other at the *September* term, 1818. Two writs of *fi. fa.* were sued out on the judgments against *Samuel C. Hall*, who was thus coerced to discharge the amounts then due, on the 20th or 21st of August 1818, with the aid, as it appears to us, of *Washington Hall*. The judgments were on the 20th of August, 1818, assigned by the *President and Directors of the Elkton Bank*, to *Samuel C. Hall*, in consideration, as stated in the assignments, of the payment being made by him, and afterwards by him to *Washington Hall*, in consideration of the same amount with a covenant in the assignment, that as a further security, a mortgage before made to *Washington Hall*, should stand charged with that amount, in addition to the sum recited in the mortgage. By which it sufficiently appears that the assignment to *Washington Hall* was made to him, not as a purchaser of the judgments, but as collateral security for the re-payment of the amount advanced or lent by him, for the purpose of satisfying the judgments, whereby *Samuel C. Hall* became his debtor to that amount, otherwise the covenant for securing the repayment of it, by tacking it to a pre-existing mortgage, would not have been made. For if, as has been urged by counsel, he was a mere purchaser of the judgments for the consideration stated in the assignment, which is just the amount paid in satisfaction of the judgments, he could not by such purchase of *Samuel C. Hall*, have become his creditor for that amount, entitled to security for the re-payment of it.

The payment by *Samuel C. Hall*, with the aid of *Washington Hall*, on the 20th of August, 1818, was made, it is true, more than three years after the notes became due and payable. But in any view of the subject, the running of the act of limitations was arrested by suits against him on the 8th of August, 1815, and the judgments on the 2nd of September, 1816; and the payment on the 20th of August, 1818, made under the coercion of the writs of *fi. fa.* issued upon the judgments, gave him a right to be reimbursed out of the real estate, the personal estate being insufficient, to which the act of limitations opposed no

bar; the original bill being filed on the 16th of February, 1819, less than one year after the payment from which his claim as surety of *Creswell* and right to sue, arose.

But it has been contended, that at the time of instituting the proceedings in Chancery, neither he nor *Washington Hall*, who came in as a party under the amended bill, had any claim or right to the relief prayed, on the supposed ground, that as by an entry in one of the books of the bank, the payment appears to have been made not by him, but by *Washington Hall*, which could vest in *Samuel C. Hall* no right or claim; and that the payment by *Washington Hall*, as a mere volunteer, and therefore without authority, could clothe him with no right to subject the real estate of which *Creswell* died seized, to sale, for the amount of the unauthorised payment so made by him. It is true, that from the evidence in the cause, such an entry does appear to have been made.   But it is equally true, that in the assignment by the *President and Directors of the Elkton Bank* to *Samuel C. Hall*, the payment is stated to have been made by him; and from the whole of the proof, and character of the transaction as disclosed in the record, it is sufficiently clear, that whether the payment was made in part by the hands of *Samuel C.* or *Washington Hall*, (which is not material,) it was made for and on account of *Samuel C. Hall*, with money lent or advanced by *Washington Hall*.   Hence the recital in the assignment of the judgments by the *President and Directors of the Elkton Bank*, where the whole of the transaction was known, and understood, that the money was paid by *Samuel C. Hall*, and known too, the covenant in the assignment by *Samuel C.* to *Washington*, that a pre-existing mortgage should, as a further security, stand charged with the amount paid.

If, indeed, *Washington Hall* did, as a mere volunteer, without any authority and on his own account, discharge the judgments, that would have given him no claim, which could be enforced against the real estate of *Creswell*.   But that does not appear to have been the case.   It has also been urged, that supposing the payment have been made by *Samuel C. Hall*,

and that he thereby acquired a right to proceed in Chancery against the real estate of *Creswell*, he by his assignment of the judgments to *Washington Hall*, divested himself of that right and transferred it to *Washington Hall*, who could alone enforce it; and that he having only come in as a party claimant under the amended and supplemental bill, which was filed on the 6th of May, 1829, his right was barred by the act of limitations. But not so as it seems to us. *Samuel C. Hall* having paid the money, the legal right was in him, subject to the equitable interest of *Washington Hall*, in respect of which only, he was brought in by the amended and supplemental bill. The claim was in before, and in time to protect it against the running of the act of limitations, having been exhibited with the original bill, the object of which was to enforce the payment of it.

The claims exhibited by other creditors, and not already commented upon, are clearly barred by the act of limitations, not being filed in time. The claim of the defendant for the amount of rent reserved in a lease from *Creswell the elder* to *Samuel C. Hall* and others, pleaded by way of set-off against his claim, cannot we think be allowed. The right of set-off is reciprocal, and mutual claims, and such as are in the same right, can alone be set off.

Here *Creswell the elder* devised the whole of his estate, after certain other dispositions in his will, to his wife *Elizabeth*, during the minority of his son *John*.

The whole of the rent claimed accrued (if at all,) during the minority of *John Creswell the younger;* the right to which was in *Elizabeth Creswell*, and if not paid, is in her representatives, she being dead. *John Creswell*, junior, (the devisee of his father *John Creswell the elder*,) who is also dead, devised the whole of the real and personal estate derived from his father, to his wife *Rebecca E. Creswell*, one of the defendants, who claims to set off the rents so accruing to *Elizabeth Creswell*. If *Elizabeth Creswell*, before her death, or her executor or administrator since, had brought suits against *Hall* to recover the rents to which she was thus entitled, it is very clear that he could not have set off against that demand, his claim grow-

ing out of his responsibility for *John Creswell the elder*, for which she was in no way answerable, and for which she could not have sustained a suit against her or her representatives, nor would she in this proceeding have been permitted, had she lived, to avail herself of her award for rent accruing in a different right, and upon covenant by way of set-off against *Hall's* claim, and much less can *Rebecca E. Creswell*, who has no right to, or interest in the rent claimed to be due, for which *Hall* is responsible (if at all,) to the representatives of *Elizabeth Creswell.* The amount, however, due on the judgment obtained by *Creswell the elder*, against him as security of *Lightner*, should be deducted from his claim. And it appearing to us that the judgments by the *President and Directors of the Elkton Bank* against *Samuel C. Hall*, were discharged in the notes of that Bank at their par value, when they were at a depreciation of twenty cents, at least, in the dollar; and that the amount given for them is all that can be properly claimed on account of the payment to the Bank, that being all that was paid, and as a reimbursement only of the amount that *Hall* was compelled to pay as the security for *Creswell*, is all that can be rightfully insisted upon, we are of opinion that twenty cents in the dollar should be deducted from the nominal amount paid to the Bank, that being the amount of the depreciation at the time on the paper in which it was paid, according to the evidence in the record most to be relied upon.

In this view of the case the claims of four of the creditors being established, and not barred by the act of limitations, the bill should not have been dismissed.

DECREE REVERSED AND CAUSE REMANDED.