(Decided March 26th, 1861.)

HORATIO C. SCOTT *vs.* MARY C. SCOTT, by CHAS. CLAGETT, her Guardian and next Friend.

Where the rules of the court below, regulating the subject, are not set out in the record, an objection that the cause was not *regularly for hearing*, under the rules of that court, cannot be taken in this court.

Where the decree appealed from states "that the cause stood ready for hearing, according to the requirement" of a certain rule of the court below, this court must presume that all prerequisites were complied with.

A debt due from the deceased father of the complainant to the defendant, is no *set off*, either in law or equity, to a debt due from the defendant to the complainant, even though the latter, *as sole heir at law* of her father, has been in possession of his lands, receiving the rents and profits thereof, which may eventually be made answerable for the defendant's claim.

Creditors, if necessary, may subject to their claims not only the lands of their deceased debtor, but also the rents and profits which have come to the hands of the heir since his death.

But where a creditor's bill has been filed for the sale of a deceased debtor's lands, to pay his debts, a creditor has no right to ask that his claim may be investigated, and allowed as a set off to a separate and distinct claim of the heir at law against him, or that the heir shall be postponed and delayed in the recovery of his claim until the determination of the creditor's suit.

APPEAL from the Equity side of the Circuit Court for Prince George's county.

The bill in this case was filed on the 28th of May 1858, by the appellee against the appellant, to recover the amount of a single bill, executed by the defendant to Polydore E. Scott, for the use of his daughter, Mary C. Scott, the complainant.

The allegations of the bill are fully stated in the opinion of the court below. The defendant, in his answer, after admitting the material allegations of the bill, avers:

1st. That the complainant has brought her action at law on the single bill in question, and he is advised he ought not to be thus doubly vexed for one cause, and that the complainant ought to be put to her election to abide by some one of said remedies, and to abandon the other, and prays that she may be required to make such election.

2nd. That Edward Scott, deceased, the father of the said Polydore and respondent, in his life time, purchased a parcel of land from respondent, and desiring to obtain a conveyance before he had paid the purchase money therefor, and it being understood that he intended to leave his estate to the said Polydore, (as he afterwards, in fact, did,) the said Polydore proposed to respondent that he should give a deed to said Edward for said land, as the said Edward desired, and that the purchase money should be set off against the said single bill, and respondent accordingly gave such deed, and insists that he may rightfully claim against the complainant the benefit of this set off, especially as the estate left by the said Edward to the said Polydore greatly exceeds the amount of said purchase money.

3rd. That there are unsettled accounts, of many years standing, between said Polydore and respondent, upon the balance of which respondent claims, and will be able to prove, that many thousands of dollars are due from the estate of the said Polydore to him, and that the claim for said purchase money is properly an item of charge, and the said single bill an item of credit, in said account; that said Polydore died largely indebted to respondent and others, and his personal estate is insufficient to pay his just debts; that he likewise left a valuable real estate, which has descended to the complainant, as his sole heir at law, and that her said guardian is in possession of the same, and in receipt and enjoyment of the rents and profits thereof.

4th. That respondent has reason to believe said real estate, together with said personal estate, will not be sufficient to pay

all the debts due from said Polydore; that a bill has been filed by certain of his creditors for a sale of said real estate, to pay his debts, and that the complainant, by her guardian, is resisting this application, and also the allowance of a very large claim of respondent against said Polydore, which he has filed in that cause, and which he can establish to the satisfaction of this court; and he believes, also, that in the progress of another suit in this court, instituted by the complainant against him, he can establish a yet larger claim against the estate of said Polydore: in any event he has no doubt he will be entitled to receive out of the proceeds of the sale of said real estate, so in the hands of the complainant, a dividend or share largely exceeding in amount the principal and interest of said single bill, and he insists the complainant ought not to be permitted to enforce payment of the same, whilst she is at the same time resisting the application of the creditors of said Polydore for a sale of his real estate, and by her guardian receiving or applying to her or his own use the rents and profits thereof; and he also insists that said claim of the complainant is a proper item in the account, to be taken between her, as representing the said Polydore, and this respondent.

The *replication* avers that the complainant ought not to be put to her election to abide by any one of the suits instituted by her against him, and abandon the other, as the respondent by his answer has alleged, and that the purchase money for the aforesaid land, purchased of the said respondent, should not be taken as a set off against her aforesaid debt, for the reason stated in the aforesaid answer; nor is the said claim for the aforesaid purchase money properly an item of charge in the account of the respondent against the said Polydore, nor the amount of said single bill an item of credit in the same, as the respondent in his answer hath alleged; that the real and personal estate left by the said Polydore is more than amply sufficient to pay all his just debts, and that in no event will the respondent be able to prove so large a sum due him from the said Polydore's estate as the amount of this complainant's claim against the said respondent, and this she prays may be inquired of by the country, &c.

A commission to take proof was issued on the 21st of April 1858, which was executed and returned, with the proof taken, on the 4th of November 1858. Interrogatories and cross-interrogatories were filed with this commission, and the proof taken was in answer to interrogatories of both parties. In the commission itself, in the order for its issual, and to the interrogatories and cross-interrogatories, the case was entitled, "Charles Clagett, guardian and next friend of Mary C. Scott, vs. Horatio C. Scott," whereas the case set out in the bill, and as placed upon the docket, is entitled "Mary C. Scott, by Charles Clagett, her guardian and next friend, vs. Horatio C. Scott."

On the 12th of March 1859, the complainant's solicitor filed in the cause an order, stating that "in compliance with the 27th rule of court, the complainant sets this cause down for final decree or hearing at April term, 1859." On the 11th of April 1859, an agreement, signed by the solicitors of both parties, was filed in the case, by which it was "admitted that the guardian of the complainant, Mary C. Scott, has received, since the filing of the bill in this cause, considerable sums of money for the rents of the real estate of the late Polydore E. Scott, her father, whose sole heir at law the said Mary C. Scott is."

The defendant then moved that the commission be suppressed and taken from the files of the court, upon the grounds—1st. That the same purports to belong to a case different from the present cause. 2nd. That it appears to have been irregularly executed in this, that after examining witnesses on the part of the complainant, the commission was closed and returned without notice to the defendant, and without giving him an opportunity of examining witnesses on his part. Exceptions were also filed to the return of the commission and the testimony taken thereunder, for the same reasons. This application and motion the court overruled and dismissed by its order of the 26th of April 1859, and on the same day the final decree, from which the defendant, on the 25th of May 1859, appealed, was passed. Accompanying

this decree the court (CRAIN, J.) delivered the following opinion:

"The bill in this case was filed by the complainant against the defendant, to recover the sum of $964.08, the amount of a single bill bearing date the 3rd of January 1844, and signed by the defendant, Horatio C. Scott, in favor of Polydore E. Scott, for the use of his daughter, the present complainant. The bill alleges that Polydore, the father of the complainant, is dead, and that the present defendant and C. C. Magruder are the administrators on his estate, and, therefore, she has no remedy at law, and seeks to recover said claim by the power and aid of this court. The bill further alleges that no part of said single bill was paid to the said Polydore E. Scott in his lifetime, or to the complainant, or any person for her use, since his death. The defendant, in his answer, admits the material allegations in the bill; the death of Polydore E. Scott, the grant of letters to himself and C. C. Magruder, the execution of the single bill, and that it was for the use of the complainant, and also that the remedy at law was gone. The answer then discloses the ground of defence, viz., the existing indebtedness of Polydore E. Scott to the defendant, at the time said single bill was executed, and claiming to be due him at this time a very large debt from his brother, the said Polydore E. Scott, the father of the complainant, which debt he proposes, when he shall be able to establish it, to discount and set off against the claim of the present complainant. The defendant admits, in his answer, that the personal estate of Polydore E. Scott is insolvent, but alleges that the real estate of Polydore E. Scott has descended to his heir, the present complainant, and that her guardian, Charles Clagett, is in possession of it, and in the receipt and enjoyment of the rents and profits of said real estate. He also says, 'this respondent has reason to believe that the said *real estate*, together with the *personal estate*, will not be *sufficient* to pay *all* the debts due from the said Polydore.'

"A general replication was filed to the answer, and a commission issued to take testimony, which was executed and returned, and filed on the 4th of November 1858, being the

Scott *vs.* Scott.

fourth day of the November term of this court. It remained the whole of the February term of the court sitting as a court of equity, and at the April term of this court the case was very fully and ably argued by the solicitors of the complainant and defendant. It is argued and insisted upon by the defendant's solicitors that the cause, under the rules and practice of this court, was not ready for hearing. The testimony remained in court the residue of the November term of this court, and the whole of the February term of the court, and no action was taken by the defendant to have it remanded. I therefore think that, according to the construction which the rules of this court have uniformly received, the cause was ready for hearing at this term of the court. Any other construction of the rules of this court would obstruct and delay justice and equity, instead of advancing and promoting the progress of business. The interpretation contended for by the solicitors of the defendant, would defeat the very object for which courts of justice have established rules for the regulation of business.

"It was also contended that the testimony taken under the commission should be rejected, because the commission issued in the name of 'Charles Clagett, guardian to Mary C. Scott,' when the case is entitled 'Mary C. Scott, by Charles Clagett, her guardian and next friend.' In the opinion of the court, they are convertible terms. The suit is for the benefit of Mary C. Scott, and is to recover a claim to her benefit. But, admitting it to be an error of the clerk, it is certainly waived when we find, by an examination of the case, the defendant actually cross-examined the witness of the complainant. But, as there is no pretence of any other case on the equity docket of the circuit court for Prince George's county, standing in the name of Charles Clagett, guardian to Mary C. Scott, vs. Horatio C. Scott, it must be inferred that the commission designed to issue in this case, and the testimony, is properly considered as filed, and applicable to the issues made in this case. See *Ellicott vs. Peterson*, 4 *Md. Rep.*, 476.

"But in the view which this court has felt bound to take of the rights and demands of the complainant against the

defendant, the defence set up in the answer is inadmissible to defeat or reduce the claim of the complainant, and as the matters relied on in the answer, if proved and established, could not defeat the complainant's claim, I cannot consent to remand the commission, and thereby postpone the complainant in having her case adjudicated.

"It is admitted and proved that the claim now sought to be recovered, is absolutely due to Mary C. Scott, in her own right, and it is not contended or claimed that any part or portion of it has been paid to her, or any person for her use. The only ground on which the defendant resists the payment of it, is a supposed claim or set off which he has against Polydore E. Scott, the father of the complainant, and which he alleges he will be enabled to establish. If it were admissible in a court of chancery to depart from the rules and principles which regulate and apply to the doctrine of set off in a court of common law, would it be just, equitable and proper to make this case an exception? More than fifteen years ago, it is admitted that, the debt was due the complainant, and that it still remains unpaid, and the only ground urged against its payment is, that at the time the debt was contracted, Polydore E. Scott was indebted to the defendant, and although the indebtedness of Polydore E. Scott existed at that very time, according to the defendant's allegations, yet he did not attempt to urge it as a proper set off against this claim of the daughter, and he now asks this court to do what he did not demand of his living brother to do: to discount and set off an indebtedness due from the father for a debt due from him to the daughter. But admitting, for the sake of the argument, that Polydore E. Scott is indebted to the defendant, Horatio C. Scott, to a large amount, with what propriety and equity could this court postpone the complainant in the recovery of her debt, when we are informed by Horatio C. Scott, in his own answer, that the real estate of Polydore E. Scott, together with the personal estate, will not be sufficient to pay all the debts due from the said Polydore? Can a court of equity, with propriety, be asked to postpone the payment of an admitted indebtedness to the daughter

Scott vs. Scott.

until the assets of her father's insolvent estate can be marshalled, and the defendant enabled to establish his claim and receive his dividend? To do so would inflict injury and injustice on the daughter, and would retard, and not promote, justice.

"But, in adjudicating this case, we are not at liberty to disregard the rules of law and principles applicable to the law of set off. A set off means a cross-claim, and is confined to mutual debts between the plaintiff and defendant. It is a privilege unknown to the common law, and is the creation of the statute, and applies to claims of individuals due in the same right, and was allowed by the statute, because it was just, right, proper and equitable, promoting justice and fair dealing, and preventing a multiplicity of suits. As such it has received the sanction and support of all courts. In support of this view of the case, I will refer to the opinion of Chancellor Johnson, in *Robertson vs. Parks*, 3 *Md. Ch. Dec.*, 71, where he says: 'As the rule at law and in equity is the same, that the right of set off must be reciprocal, and that mutual claims and such as are in the same right can alone be set off, it follows that this claim cannot be set off, as it is due in another right.' Admitting the defence, the claim is due from Polydore E. Scott, and cannot be set off against the claim and debt of the daughter, for the want of that mutuality which the rule requires. And in 4 *Md. Ch. Dec.*, 13, the chancellor says: 'to authorize a set off either at law or in equity, the debt must be mutual, and due to and from the same persons, and in the same capacity.' And again, at page 325, of same volume, in the case of *Gibbs vs. Cunningham*, he says: 'there must be reciprocity and mutuality in the right of set off, and the demands on the one side and the other must be in the same right.' These principles, enunciated by the chancellor as governing and controlling the law of set off, are recognized and affirmed by the Court of Appeals in several cases. In 12 *Gill & Johns.*, 36, Chief Justice Buchanan says: 'The right of set off is reciprocal, and mutual claims, and such as are in the same right, can alone be set off;' and again, at page 397, *(Darnall vs. Hill,)* the

claims, says Archer, justice, 'are not due in the same right, and therefore cannot be set off;' and in *Milburn vs. Guyther,* 8 *Gill,* 92, the court say: 'to warrant a defendant in pleading a set off, he must not only be entitled to recover the amount due him from the plaintiff, but his claim must be of such a nature that he can sue for it, and recover it by a suit in a court of law.' This is the extent to which our courts have gone in permitting set offs, which is as far as the statute designed them to go in furtherance of justice, and to subserve the convenience and interest of litigating parties.

"So it is clear that, on principle and authority, we cannot recognize the right of the defendant to set off a claim due him by Polydore E. Scott, against the admitted claim of the complainant. In a court of chancery a party will be protected from wrong and injury, and equitable set offs will be allowed when reason and justice require it, but the case made by the answer of the defendant, and the facts in the case, will not justify the court to postpone the complainant in the recovery of her just and admitted claim, and I will sign a decree in conformity with the views expressed in this opinion."

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*C. C. Magruder* and *Thos. S. Alexander,* for the appellant, argued:

1st. That the court should have suppressed the commission and the proof taken under it, and should have remanded the same. It must appear *on the face* of the commission that it issued in the *cause in which* the testimony is used. Here the *two cases* indicated by the bill and commission are *not the same,* and *non constat* but there is a case in which the commission was properly issued. 4 *Md. Rep.,* 476, *Ellicott vs. Peterson.* Again, the return is irregular, as it does not appear that the commissioners gave notice to the defendant of their intention to return it. That this point is open on this appeal, see the Act of 1830, ch. 185. *Alex. Ch. Pr.,* 183,

184.  2 *H. & G.*, 191, *Strike vs. McDonald.*  3 *Md. Rep.*, 555, *Ware vs. Richardson.*  3 *Gill,* 152, 153, *Dugan vs. Gittings.*  As to the mode in which infants may sue in equity, see *Story's Eq. Pl.*, secs. 58, 59 and *notes.*

2nd.  That the cause was not regularly for hearing at the April term 1859 of the court below, under the 37th rule of that court, or according to the practice in chancery.

3rd.  That the *replication* is a special replication, and *confesses* all the allegations of the answer not put in issue specially by that replication.  If a plaintiff is disposed to controvert a part of a case made by the defendant's answer, and to admit the rest, he may put in a replication so far special that it is confined to the particular matter controverted, instead of being a general denial of the truth of the whole answer, and *then the defendant is put only to proof of the matter replied to.*  *Prac. Reg.*, 372, cited in *Mitford's Eq. Pl.*, 322, *note (e.)*  *Hinde's Ch. Pr.*, 285, 288.  1 *Harrison's Ch. Pr.*, 391, 393.  *Beames' Orders in Chancery,* 70, 180.

4th.  The replication thus conceding all the facts of the answer, save those specially put in issue, we have it conceded that the appellant was a large creditor of Polydore E. Scott at the time of his death, that a creditor's bill had been filed to subject his real estate to the payment of his debts, and that in that cause the appellant had filed his claim, and that the complainant is resisting this claim, and as heir at law of her said father, is in possession of this real estate, enjoying and receiving the rents and profits thereof to her own use.  It is also admitted, independent of the replication, that she has received, since the filing of this bill, considerable sums of money for the rents of this real estate.  Under these circumstances, it is insisted, that the defendant's claim is an *equitable set off* to the complainant's claim, and he should have the opportunity of proving and ascertaining the amount of his claims against the estate of Polydore E. Scott, before he is compelled to pay the claim of the complainant.  2 *Paige,* 581, *Lindsey vs. Jackson.*  *Barbour's Law of Set Off,* 197, 198, 199.  5 *Cranch.*, 34, *Tucker vs. Oxley.*  14

*Johns.*, 63, *Simson vs. Hart.* 1 *Monroe*, 194, *Robbins vs. Holley.* 2 *McCord's Ch. Rep.*, 184, *Nettles vs. Elkins.* 3 *Bibb.*, 288, *Sanders vs. Sanders.* 3 *Hare*, 553, *Courtenay vs. Williams.* 7 *Beav.*, 67, *Nicholson vs. Norton.* 2 *Peere Wms.*, 128, *Jeffs vs. Wood.* 16 *Md. Rep.*, 352, *Lane & Wife vs. Fallen & Wife.* 4 *Gill*, 364, *Warfield vs. Owens.* 2 *G. & J.*, 307, *Watkins vs. Harwood.* 6 *G. & J.*, 54, *Joice & Wife vs. Taylor.* 10 *G. & J.*, 267, *Owings vs. Owings.*

*Thos. G. Pratt*, for the appellee, argued:

1st. That the order of the court overruling the objections of the appellant to the admissibility of the testimony taken and returned under the commission, will not be reversed, because no appeal was taken from that order, and its correctness cannot be considered or reversed in this court. The Act of 1830, ch. 185, has never been construed by this court as applicable to a case like the present.

2nd. But if this order can now be considered, the objections to it furnish no proper ground for its reversal. The first objection, in substance, denies the identity of the case in which the commission issued with the *case at bar*, and is based solely upon the fact that the *titling* of the one is different from that of the other. But in the absence of proof that *any other case between the same parties was on the docket*, and with the affirmative fact that in this very case in which the proof is returned, the appellant filed cross-interrogatories, and examined witnesses, it is insisted that the identity of this case with the one in which the proof is taken is sufficiently established. 4 *Md. Rep.*, 476, 485, *Ellicott vs. Peterson.*

3rd. The other objection, that the commission was returned without notice to the appellant, is equally untenable. The filing of interrogatories and taking of proof by the appellant, the return of the proof and its laying in court during the Nov. term, 1858 and February term, 1859, then the regularly setting the case down for final hearing at the next term of the court, it is insisted, deprive the appellant, when

the case was up for final hearing at April term 1859, of the right to ask that the commission should be remanded. 5 *H. & J.*, 438, *Law vs. Scott.* The decree states that the case stood regularly for hearing under the rule of court, this court must assume that all prerequisites for a final hearing were duly complied with, 6 *H. & J.*, 403, *Rigden vs. Martin.*

4th. But if the application of the appellant had been granted, and the commission and proof had been withdrawn from the files of the court, still the decree would not be reversed, because the answer of the appellant admits all the facts necessary to support that decree. The defences set up in the answer are independent facts, not responsive to the bill, and consequently could not be relied on by the appellant at the hearing unless regularly proved by him. The objections to the proof by the appellant are, that no commission ever issued in *this* case, and that no proof has been consequently taken *in it,* from which the conclusion must follow, that the case, when set down for final hearing, was to be heard upon bill and answer, and as the answer justifies the decree it must be affirmed.

5th. That the decree should be affirmed because the answer admits all the facts necessary to establish the appellee's right to recover, and because the defences set up in the answer are not responsive to the bill, and *were not proved.*

6th. That the allegations of the answer, if proved, would furnish no just grounds of defence to the appellant, because he would not be permitted to set off a debt due to him from Polydore E. Scott, against the debt due by him to the appellee. The proposition is to set off a debt due from a deceased father against a debt due to his minor daughter. If the father were living it would not be pretended that the appellant could set off a debt due to him by the father against a debt due by him to the daughter. To authorise a set off, whether at law or in equity, the debts must be mutual, and due to and from the *same* person and in the *same* capacity. 3 *Md. Ch. Dec.*, 71, *Robertson vs. Parks.* 4 *Md. Ch. Dec.*, 14, *Watkins vs. Zane. Ibid.*, 325, *Gibbs vs. Cunning-*

*ham.* 12 *G. & J.*, 51, *Hall vs. Creswell. Ibid.*, 397, *Dar-nall vs. Hill.* 8 *Gill*, 94, *Milburn vs. Guyther.* The only ground on which the set off can possibly be considered, is, that the rents and profits of the lands of her father, came to the hands of the guardian of the infant complainant. But if a bill had been filed *in the language of the appellant's answer*, asking that these rents and profits should be applied to the payment of his claim, it would not have authorised such an application of them. 6 *G. & J.*, 423, *Guyer vs. Neth.* 4 *Gill*, 379, *Warfield vs. Owens.*

BARTOL, J., delivered the opinion of this court.

We think the decree, in this case, ought to be affirmed. The objection, that the cause was not regularly for hearing, under the rules of the circuit court at the April term 1859, when the decree was passed, is without any force; because the rules of that court, regulating the subject, are not set out in the record, and besides the decree states that, "the cause stood ready for hearing according to the requirement of the thirty-seventh rule, and we must presume all prerequisites were complied with." *Rigden vs. Martin,* 6 *H. & J.,* 407.

In the view which we take of the case, it is not necessary for us to express any opinion upon the exceptions to the commission and the testimony returned therewith, and the order of the court overruling these exceptions. Without reference to the evidence, the complainant was entitled to the decree upon the pleadings in the cause. The case made by the bill was one clearly entitling the complainant to the relief prayed, and its material facts were admitted by the answer, which set up in defence new matter in avoidance, that was not sustained by any proof. Even if we are to consider the replication as admitting that Polydore E. Scott, (the father of complainant,) was indebted at the time of his death to the respondent, still we concur with the judge of the circuit court in the opinion, that such a debt is no set off, either in law or equity, to the debt due from the respondent to the complainant, to recover which this bill was filed. The authorities re-

ferred to by the learned judge in his opinion, fully sustain this conclusion. The general principles which govern the rights of parties as to set off, are the same in courts of law and equity. 3 *Md. Ch. Dec.*, 71. 4 *Md. Ch. Dec.*, 325. 12 *G. & J.*, 36. *Ibid.*, 397. 3 *Mason*, 145. In the case of *Lindsay vs. Jackson*, 2 *Paige*, 581, this subject is elaborately considered. The chancellor, on page 582, says: "As a general rule the court of chancery followed the rule of law, and after the statute had permitted set offs, to a certain extent in suits at law, this court also adopted and acted on that principle. But the court of chancery, even before the statute, recognized the principle of natural equity, and acted upon it in cases where the law could not give a remedy in a separate suit, in consequence of the insolvency of one of the parties." "And at this day, if the court finds a case of natural equity, not within the statute, it will permit an equitable set off, if from the nature of the claim, or from the situation of the parties, it is impossible to obtain justice by a cross-action." A number of cases are cited by the learned chancellor, and although we approve of the decision in *Lindsay vs. Jackson*, and of the general reasoning upon which it is based, yet, neither that case, nor any to which we have been referred, has extended the right of equitable set off to such a case as the present. The chief ground upon which it has been attempted to be sustained in the argument is, that the complainant, as the heir at law of the respondent's debtor, has been in possession of the debtor's lands, receiving the rents and profits thereof, which may eventually be made answerable for the respondent's claim. But it appears from the answer that proceedings have been instituted by the respondent and other creditors of Polydore E. Scott, for the purpose of establishing their claims, and obtaining a decree for the sale of the lands which have descended to this complainant. Those proceedings are now pending, and it is competent for the creditors, if necessary for their rights, to subject to their claims, not only the lands of Polydore E. Scott, but also the rents and profits which have come to the hands of the heir since his death. *Warfield, et al., vs. Owens*, 4 *Gill*, 379.

Whatever equitable claims the respondent may have against Polydore E. Scott, deceased, may be established and secured by that proceeding, and he has no right to ask that they be investigated and allowed as a set off, to the separate and distinct claim of the complainant in this cause, or that the complainant shall be postponed and delayed in the recovery of her debt, until the determination of the other suit.

*Decree affirmed, with costs to the appellee.*