ELIZABETH S. KAMPMANN v. D. SULLIVAN & Co.

Decided May 1, 1901.

**1.—Receiver's Certificates—Liens—Priority.**

Where a receiver for a street railway company was authorized to issue certificates to pay certain debts, and the order of court declared the certificates a first lien on the entire property, such lien was entitled to priority over claims for material and for operating expenses thereafter furnished and incurred.

**2.—Same.**

Such certificate being issued to raise funds with which to pay off labor liens existing against the railroad, and to purchase ties and car wheels necessary to the continued operation of the business, were not deprived of their priority by the provision of the statute governing the classification of claims against funds in the hands of receivers, and which gives a lien only on the earnings coming into the receiver's hands. Rev. Stats., art. 1472.

Appeal from Bexar. Tried below before Hon. J. L. Camp.

*Onion & Henry, Houston Bros.,* and *R. J. Boyle,* for appellant.

*J. C. Sullivan,* for appellees.

FLY, ASSOCIATE JUSTICE.—This is a contest as to the proper distribution of the funds arising from the sale of the property of the Alamo Heights Railroad Company by a receiver under order of the District Court. Substantially the following statement of the case and of the facts proven was agreed to by the parties:

(1) W. H. Hume was, on the 3d day of February, 1897, appointed in this case as receiver of all the rights, properties, franchises, etc., of the Alamo Heights Railroad Company.

(2) On the 12th day of June, 1897, the court, upon the application of the receiver, entered an order authorizing the receiver to issue three receiver's certificates of $500 each, and to sell the same for not less than their face value. The order as entered by the court contained, among others, the following recitations and provisions:

"And considering that portion of the said report which prays for the issuance of the receiver's certificates to the amount of $1500 for the purpose of paying off the labor liens now existing against said road, and of paying the cost price of four car wheels, and for paying for the purchase of 1000 ties, and for the labor required to place said ties in the track, and finding that the plaintiff herein, Edwin Packard, and the said Alamo Heights Railroad Company, and the said Franklin Trust Com-

pany, as trustee for the bondholders of the Alamo Heights Railroad Company, have no objections to the issuance of said certificates, and the court further finding that the issuance of the same is necessary and proper for the purpose of paying off the labor liens now existing against the said road as shown by the report of said receiver, which is ordered recorded herewith, and also for the purpose of paying for said carwheels, and for the purchase and laying down of said ties, therefore decrees that the receiver, W. H. Hume, be and he is hereby authorized to issue three receiver's certificates for the sum of $500 each; same to be dated on the 14th day of June, 1897, and to mature six months thereafter, and to bear interest at the rate of 8 per centum per annum from date. And it is further ordered that the said three certificates shall be a first lien upon the entire property, income and franchises of the said Alamo Heights Railroad Company, and shall be given priority in payment over any other liens or debts of any and every class or kind now existing, or that may hereafter arise against said Alamo Heights Railroad Company, while this receivership is pending, and that said receivership certificates be in substance of the folowing form, to wit:

" 'State of Texas, Bexar County: By virtue of the authority vested in me, W. H. Hume, receiver for the Alamo Heights Railroad Company, thereto appointed by Hon. R. B. Green, judge of the District Court of the Thirty-seventh Judicial District of Bexar County, Texas, on the 3d day of February, 1897, and by virtue of the authority of a certain decree and order made by said court, in cause No. 8679, Edwin Packard v. Alamo Heights Railroad Company et al., which said order was made on the 11th day of June, 1897; by said R. B. Green, judge of the District Court, Thirty-seventh Judicial District, as aforesaid, I hereby certify that, as receiver for the said railroad company, I am indebted to the holder thereof the sum of $500, which shall mature in six months from this date, together with interest thereon at the rate of 8 per centum per annum from this date, and that as security for said indebedness the holder hereof has, by virtue of the order aforesaid, a first lien upon the entire property, income, and franchise of the said railroad company, which said lien is and shall be superior to all other liens of every class and kind now existing against said railroad company, or that may hereafter arise against same, during the pendency of said receivership, except that two other certificates for an equal amount with this, and having equal authority and equal rights as a lien upon the income, property, and franchises of said road, have this day been issued by me in accordance with the order of said court. To certify which I, as receiver of the said railroad company, and acting under the order of said District Court as aforesaid, do hereto set my hand at San Antonio, Bexar County, Texas, on this 14th day of June, 1897.

" 'W. H. HUME, Receiver Alamo Heights R. R. Co.'

"It is further ordered that each of the said certificates shall be sold by said receiver, but for not less than its par value, and that the said W. H.

Hume, receiver, be and is hereby instructed to pay out of the proceeds of sale of said certificates the labor liens named therein, and also to pay for said car wheels, and also to purchase said one thousand ties, and to place them in the track of said railroad company. And it is further ordered that this decree be recorded in full by the clerk of this court, in the minutes thereof.

"ROBT. B. GREEN, Judge."

The receiver's application for authority to issue receiver's certificates was filed on April 15, 1897, and gave an itemized statement of the labor liens due to various persons named therein, amounting to $701.31, and the said application, among other things, contained the following:

"He further represents that since his appointment as receiver he has bought four car wheels from the Treat Manufacturing Company, of Hannibal, Mo., for which he is indebted to said company in the sum of $17; that said car wheels were absolutely necessary in the running of the said road. He further represents that the track of said street railway is in a very bad condition; that it is rapidly deteriorating and that it is absolutely impossible to run same for a profit, unless it is at once repaired. That for the repair of said road, and in order to put the track thereof in good condition, 1000 cedar cross-ties will be required, and the cost of same will be 45 cents per tie, or in all a sum of $450; and that the labor of putting said ties in track and putting said track in good condition will be reasonably worth the sum of $250. He represents that the amounts due as aforesaid as labor liens are due to the men whose names are therein given, and that they are poor men, and dependent upon their daily earnings for support of themselves and their families, and that they are greatly in need of the said money due to them from the said road, as aforesaid. Wherefore, petitioner prays that this court make an order and decree permitting him to issue receiver's certificates to the amount of $1500, payable at such times as the court may direct, and bearing such interest as the court may decree, for the purpose of paying off said labor liens, and of paying the cost price of said four car wheels, and for the purchase of said 1000 ties, and for the labor required to put said ties in position."

(3) On the 14th day of June, 1897, W. H. Hume, receiver, did, under the authority conferred by the order above recited, issue three receiver's certificates for $500 each, and on that day sold the same to D. Sullivan & Co. for the full face value thereof, and used the proceeds for the purposes specified in said order, and the said D. Sullivan & Co. have been ever since and are now the owners of all the said receiver's certificates, and no part of the same has even been paid.

(4) The property of the Alamo Heights Railroad Company consisted, among other things, of a street railroad in the city of San Antonio, which W. H. Hume operated as receiver until the property was sold under the order of court in November, 1900. The said street railroad owned no power plant, and in order to operate said property

and keep it as a going concern it became necessary to contract for power to be used in the operation of the cars of the said street railroad and the said receiver, acting under the authority of the court, contracted with the San Antonio Gas Company for power, which was furnished by the said gas Company under said contract with the receiver, and at the date of the sale there was a balance due to the said San Antonio Gas Company by the receiver of $2769.05, and the claim against said receiver for that amount is now owned and held by Elizabeth S. Kampmann, administratrix of the estate of H. D. Kampmann, N. C. M., by assignment from the San Antonio Gas Company. That the said indebtedness to the San Antonio Gas Company was incurred by the receiver subsequent to the issuance and sale of the receiver's certificates. No order of the court was ever entered giving the said San Antonio Gas Company any preference lien.

(5)   On May 15, 1899, W. H. Hume, receiver, made application to the court for authority to enter into a contract with the Mutual Electric Light Company to purchase electricity for the operation of its cars, it being represented that the San Antonio Gas Company had given notice that it would no longer furnish power to operate cars.   The contract was entered into between the said receiver and the Mutual Electric Light Company on May 15, 1899, and approved by the court, and the Mutual Electric Light Company furnished power under said contract until the said Mutual Electric Light Company sold out its property, which was acquired by its successor, the San Antonio Gas and Electric Company, which last named company continued to furnish power under said contract with the Mutual Electric Light Company, and at the date of the sale of the property of the Alamo Heights Railroad Company there was a balance due on said contract to the said San Antonio Gas & Electric Company of $1651.65.

(6)   It was also established and agreed that there was due by said receiver for material and supplies furnished to the said receiver the following amounts as hereinafter named:   W. C. Schuwirth & Co., $29.50; F. F. Collins & Co., $19.10; Dubinsky & Co., $31.87; San Antonio Supply Co., $394.09; Peter Shiffers, $14.45, and that there was also due to Harriet Davis for personal injuries inflicted during the receivership, judgment for the sum of $250.

(7)   On the 6th of November, 1900, all the property, rights, and franchises of the Alamo Heights Railroad Company were sold under order of the court for the sum of $7500 cash.   All the parties agreed that, without regard to the true classification of their claims, and without waiving a preference claim which the parties might have to the balance of said fund, the court should direct the receiver to pay out at once certain items of indebtedness consisting of costs of court, State, county and city taxes, amounts due to the employes of the receiver and to the receiver's attorneys, and that after such items had been paid, there remained a balance of the proceeds of said sale amounting to about $2700.

(8) That upon a hearing before the court as to a proper distribution of the balance above stated, Elizabeth S. Kampmann, as the owner of the claim of the San Antonio Gas Company, and the San Antonio Gas & Electric Company, claimed that they were entitled to an equal participation with the receiver's certificates in the distribution of the balance so remaining.

(9) D. Sullivan & Co. claimed that they were entitled to a preference against all other claims by reason of the terms of the order of the court authorizing the issuance of the receiver's certificates.

(10) The court, upon said hearing, entered an order directing the receiver to first pay out of the balance remaining in his hands the receiver's certificates in full, together with interest thereon at the rate stated in said certificates from the date of said certificates to the date of payment, and that the balance remaining should be pro rated between the said Elizabeth S. Kampmann, administratrix of the estate of H. D. Kampmann, N. C. M., the San Antonio Gas & Electric Company, W. C. Schuwirth & Co., F. F. Collins & Co., Dubinsky & Co., San Antonio Supply Company, Peter Shiffers, and Harriet Davis, in proportion to the amount of their respective claims.

It is contended by appellants that receiver's certificates, issued by authority of a court of competent jurisdiction to obtain money to pay for material and labor, are not superior in equity and right of payment to the claims for the payment of which the money was borrowed on the certificates, although it was provided in the order authorizing the issue of the certificates that they should "be a first lien upon the entire property, income, and franchises," of the railroad company. The further propositions are advanced that where a court of equity takes charge of a street railroad and causes the same to be operated, the operating expenses are a first lien upon the earnings as well as upon the corpus of the estate, and take precedence over certificates issued by the court and made first liens on the property.

That courts of equity have the power to create liens on the entire property of a railway corporation for the payment of certain classes of incumbrances, and give such certificates preference liens over all other debts, even those evidenced by first mortgage liens, is no longer open to question. In the case of Wallace v. Loomis, 97 United States, 146, it was said: "The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, can not, at this day, be seriously disputed. It is a part of that jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands."

In the case of the Union Trust Company v. Illinois Midland Railway, 117 United States, 434, in which there was a contest over the question of

priority of payment of a receiver's certificate over debts evidenced by bonds, it was held that "in regard to certificate issued for necessary repairs, there could be no doubt either on authority or on principle." The cases of Wallace v. Loomis, 97 United States, 146, and Miltenberger v. Railway, 106 United States, 286, were cited and approved. In this latter case the receiver had been authorized by the court to purchase engines and cars and to pay off accounts and balances for material and repairs and to construct five miles of new road and bridge. The certificates for the claims named were afterwards allowed to be paid out of the proceeds of sale, before mortgage bonds. Some of the debts were in existence when the receiver was appointed.

In the case of Ellis v. Water Company, 86 Texas, 109, a receiver had been appointed for the Vernon Ice, Light and Water Company, and receiver's certificates were issued by the court for the purpose of keeping the company's works in operation. The court extended the doctrine of the power of the court to issue such certificates to other than railway corporations, and it was said as to the exercise of such power that "the court should have the right to make the expense chargeable upon the corpus in the event the income may not prove sufficient to pay the expense. The conduct of a business that has proved insolvent is not likely to yield a net income, and if the creditors of the receiver could only look to such revenue for the satisfaction of their claims, he would be unable to obtain credit, and the operation of the works would be impracticable." In the case of Railway v. McFadden, 89 Texas, 138, the court said: "The court appointing a receiver to take charge of and control a railroad may make the liabilities incurred by him a charge upon the corpus of the property, and upon sale may direct their payment from its proceeds."

The foregoing decisions not only hold that the court appointing a receiver may authorize the issuance of certificates to pay certain debts, but may give them a preference lien on the corpus of the estate, with precedence over other debts, even those secured by mortgage liens. It would seem clear that if a debt secured by a first mortgage lien can be set aside to make way for debts incurred for certain purposes, there can be no merit in the contention that such preference lien given by the order of the court should be held null and void as to claims arising afterwards with full notice of such prior judgment lien.

It is contended, however, that article 1472 of the Revised Statutes must govern as to the classification of claims, and precludes a court from giving any preference to debts evidenced by certificates. The article in question has reference alone to the earnings which come into the hands of the receiver, and gives no lien except as to the earnings of the property. The certificates were issued to pay off labor liens existing against the road, which are declared by statute (article 3312) to be superior to all other liens, and for the purchase of ties to repair the track and four car wheels which were represented to be necessary in order to profitably conduct the business; and all the courts concur in holding that the court

appointing a receiver can authorize the issuance of certificates upon which to borrow money to pay off such claims, and that such certificates shall be a first lien on the corpus of the property. Appellants extended credit to the insolvent railroad after the order of the court fixing the lien of the certificates had been made, and are chargeable with full notice of such lien. Not only is there no rule of equity that would give them the right to an equal distribution of the proceeds of the sale with the holders of the certificates, but it would be prossly inequitable to deprive the holders of the certificates of the benefits given by the order of the court under which the certificates were issued.

The case of Union Trust Company v. Illinois Midland Railway, above cited, is cited by appellants as sustaining their position. We do not think that case authority for such doctrine. The Supreme Court, in passing upon eighteen different series of certificates issued in satisfaction of claims of almost every character, incurred by the railroad company and receiver, held a number of the certificates invalid, but those issued for repairs were held to take priority over other debts. The court said: "Property subject to liens and claims and debts of various characters and ranks, which is brought within the cognizance of a court of equity for administration and conversion into money and distribution, is a trust fund. It is to be preserved for those entitled to it. This must be done by the hands of the court, through officers. The character of the property gives character to the particular species of preservation which it requires. Unimproved land may lie idle, with only payment of taxes. Improved property should be rented. Movable property that is not perishable may be locked up and kept; but if perishable, it must be sold, by way of preservation. A railroad and its appurtenances is a peculiar species of property. Not only will its structures deteriorate and decay and perish, if not cared for and kept up, but its business and good will will pass away, if it is not run and kept in order. Moreover, a railroad is a matter of public concern. The franchises and rights of the corporation which constructed it were given not merely for private gain to the corporation, but to furnish a public highway; and all persons who deal with the corporation as creditors or holders of its obligations must necessarily be held to do so in view that, if it falls into insolvency and its affairs come into a court of equity for adjustment, involving the transfer of its franchises and property by a sale into other hands, to have the purposes of its creation still carried out, the court while in charge of the property has the power, and under some circumstances it may be its duty, to make such repairs as are necessary to keep the road and its structures in a safe and proper condition to serve the public."

The judgment is affirmed.

<em>Affirmed.</em>

Writ of error refused.