WESLEY B. PORCH

*v.*

THE AGNEW COMPANY.

[Filed March 31st, 1904.]

1. Inadequacy of price is not alone a sufficient reason for refusing confirmation of a judicial sale, unless the bids reported are so low in their relation to the market price that great injustice will be done by confirming the sale.

2. Where a sale of lands charged with superior liens is made under section 81 of the Corporation act (*P. L. of 1896 p. 308*), whereby such liens are discharged and related to the purchase-money, the court, when confirmation of such a sale is asked, will consider the equities of such lienholders.

3. If a sale be refused confirmation on the ground of inadequacy of price alone, the applicants for a resale will be required to give some security or assurance that at such resale a higher purchase-price will be bid for the property.

On application to have receiver's sale confirmed.    Order to show cause, &c.

*Mr. David J. Pancoast* appeared for the creditors resisting confirmation of the sale.

*Mr. Clarence L. Cole,* for the purchaser.

*Mr. Lindley M. Garrison,* for the receiver.

Grey, V. C.

The sale in this case is reported by the receiver of the insolvent defendant corporation.    The receiver was appointed by this court in this cause.    The property consists of a large hotel and a lot of land whereon it is erected, situate in Atlantic City, on the ocean, in a desirable and valuable location, having about one hundred and sixty-three feet and a fraction, of frontage on the ocean.    It is that frontage which is usually made the standard or basis for computation of values in that locality.    It is proven to be worth over $500 per lineal foot of ocean frontage. The hotel building on the premises is comparatively new, having been completed for use in the summer of 1902.    It is appropriately and fully furnished.    Both the hotel and its furnishings are in fairly good condition, save that the roof of the hotel was somewhat carelessly built and the building has been located so near the ocean that it is subject to some threats from the heavier sea storms.

The land on which the hotel is built cost $81,500.    The contract price for building the hotel itself was more than $120,000. The receiver appraised the furniture at the sum of $14,899.45. The aggregate of these sums makes a total apparent value of the real and personal property sold by the receiver of more than $216,000.

The receiver, under section 81 of the Corporation act (*P. L. of 1896 p. 308*), was ordered, in view of disputes touching the validity of the mortgage and the mechanic lien claims, to sell the property clear of all those liens.    The mortgage claim is a

single mortgage, securing an issue of $235,000 of bonds. The lien claims may be stated in round numbers at $3,000. The present lien charges on the property which will be cleared by the receiver's sale of this property are therefore $238,000, with accrued interest. This summary of claims does not include any of the $250,000 capital stock.

By the order for sale the receiver was directed to require a cash payment of $35,000 from the purchaser at his sale. He duly advertised the property for sale at auction, and put it up in two separate lots—one the hotel and land, for which he received and accepted a bid of $30,000; the other the furnishings of the hotel, for which he received and accepted a bid of $3,000, making the total amount bid for the whole property to be $33,000.

Upon the coming in of the receiver's report of this sale an order was allowed to show cause why the sale should not be confirmed, with leave to take affidavits. The undisputed proof is that the property, for which the receiver accepted bids to the amount of $33,000, is actually worth at least $60,000 to $100,000. Several affidavits state its value to be more than $150,000. The previous proceedings in this cause also indicate that the value of the property sold is at least several times the amount of the present bids.

The question here is whether this sale should be confirmed. The rule is settled that mere inadequacy of price is not of itself sufficient ground for refusing confirmation of a judicial sale. The variance between the bid reported and the fair market value must be so great as to bring the court to the opinion that serious injustice would be done by a confirmation—so great, indeed, that the purchaser himself could not fairly expect the court to ratify the sale, which he was notified it must do, in order that his bid should be finally accepted.

I have no doubt whatever that the receiver in this case has done what he conceived to be his duty. There is no claim or charge that he has by act or omission willfully brought about the present condition. But it is claimed that without any intention on his part to do any wrong thing, the bids reported

by him are so low, with relation to the true market value of the property, that it would be unconscionable to confirm the sale.

I do not see how that can be denied as an established fact. The property is shown to be worth from two to three times—probably four times—the amount of the bids which the receiver has reported. On that ground, under the circumstances, I think I am bound to refuse to confirm this sale.

There is, however, an additional reason, which does not appear in the reported cases to have been considered at all, which should, it seems to me, have the consideration of counsel and of the court in discussing this question. This property was offered for sale by the receiver, not by an ordinary judicial sale made after a hearing and judgment or decree thereon, in which the rights of the parties have been inquired into and established. This sale is made by the receiver under a special statutory order of the court, by which all the liens antecedent to the receivership will be compulsorily wiped off of the premises. If a foreclosure of the mortgage had taken place, the mortgagee could have selected the time and manner of the sale; he could have postponed it if he thought the price offered was unfavorable—in fact, he would have had control of the whole transaction.

When, however, the sale is made by the receiver, under section 81 of the Corporation act, although there are $235,000 of outstanding bonds secured by the mortgage whose lien on the mortgaged premises will be discharged by the receiver's sale, the mortgagee and bondholders have no control whatever over the conditions of sale, the acceptance of bids or the postponement, if the bids are too low. Their only opportunity to protect themselves in case of misjudgment on the part of the receiver is by an application to refuse confirmation of a sale which they did not ask for, over which (although they have a superior lien) they have no control, and which takes from them the property mortgaged to them. That, I think, is an additional reason which should lead this court to listen favorably to the present application, and to hesitate to compel these bond-

holders to accept as a price for the property mortgaged to them, a bid of only one-seventh of the amount of their bonds.

There is something to be said, however, with regard to the attitude of these creditors who resist confirmation of this sale. They ought not to be permitted to require this property to be put up again for sale without giving some assurance that substantially higher bids shall be secured. The practice in such cases was indicated by the mode of procedure in the case of *Rowan* v. *Congdon, 8 Dick. Ch. Rep. 385.* The court of appeals in that case refused, because of gross inadequacy of price, to change the order of the chancellor confirming a sale, unless within thirty days after the remission of the record to the court of chancery some prospective purchaser should enter into bond, with security satisfactory to the chancellor, that in the event of a resale a greater bid would be made for the mortgaged premises.

The creditors in this case have not as yet made any suggestion which assures the court that on a future sale bids will be made which are any higher than those named in the report of sale now under consideration. Although the equities in this case justify a refusal to confirm this sale, I am quite unwilling to make such an order unless something is tendered in the way of a better bid which shall be absolutely secured to be made at such future sale. This requirement may come as a surprise to the parties who resist this sale. Their interests are somewhat variant, their claims numerous and not, individually, very large in amount. If their counsel desires, I will give them an opportunity for a conference and joint action looking towards the tender of such a bond as was required in *Rowan* v. *Congdon.* I think I ought now to indicate the least sum which the court would accept as being guaranteed to be bid in case this sale shall be set aside. I will hear counsel as to what that sum should be.

Mr. Pancoast—I do not care to be heard on that question.

The Vice-Chancellor—I think the parties interested in resisting this sale should enter into a bond, with security satisfactory to the chancellor, that at a resale at least $60,000 will in the aggregate be bid for the two lots of property—the real

estate and the personal. If such bond is given, confirmation will be refused and the receiver will be directed to resell the property; if such bond is not given, the sale will have to be confirmed. I will hear counsel on the question of the time within which such a bond should be given.

Mr. Pancoast—Ten days.

The Vice-Chancellor—Ten days is a reasonable period. I will give the resisting creditors ten days within which to prepare and produce here such a bond. Otherwise the sale will have to be confirmed.

No costs will be allowed on this matter.

Afterwards the receiver suggested that it had been intimated to him that an appeal would probably be taken by the bidder at the receiver's sale from any order refusing confirmation; that the receivership funds were so low that it was doubtful whether the insurances and expenses of the care of the property could be provided for during the period of an extended litigation. The parties again appeared, and an additional stipulation was required to be inserted in the condition of any bond which might be given, providing for the contingencies noted, as the court might order.