CENTRAL TRUST COMPANY *v.* H. B. MEHRING COMPANY ET AL.

[No. 91, October Term, 1927.]

478

*Decided February 9th, 1928.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Leslie N. Coblentz* and *Leo Weinberg,* for the appellant.

*Albert S. Brown,* with whom were *Arthur D. Willard* and *Milton G. Urner, Jr.,* on the brief, for H. B. Mehring Company and others.

*W. Clinton McSherry,* for Charles A. Opel, Jr.

OFFUTT, J., delivered the following opinion, in which SLOAN, J., concurred.

The American Foundry and Manufacturing Company was from 1910 to 1915 engaged in the manufacture of iron and steel products in Frederick City, Maryland. Whether it was ever successful does not appear, but it does appear that for some time prior to December 15th, 1925, it had been suffering heavy losses, and that on that date its credit was crippled, it was unable to meet its pay roll, the interest on bonds aggregating $44,000, secured by a mortgage deed of trust on its property, was overdue, it was unable to meet its current

obligations, and it was in urgent need of additional working capital.

In that crisis some interested persons conceived the idea that if a receiver were appointed to take charge of and operate the company, that he could secure sufficient working capital through the issuance of receiver's certificates to carry it on at a profit and that it would in that way be carried over its difficulties.

Accordingly, on December 25th, 1925, Charles A. Opel, Jr., a stockholder and creditor of the company, filed a creditor's bill against it in the Circuit Court for Frederick County, in which, in addition to the facts stated above, he alleged:

"The officers and directors of the company have been in negotiation with an experienced operator of an iron and steel foundry, whose services can be secured and they believe that by a continued operation of the defendant company a plan of operation or sale can be developed which will be of material benefit and advantage to the defendant company, its creditors and stockholders. For this reason and for the reasons hereinafter stated your complainant believes and so charges that it is absolutely imperative and essential that your Honorable Court intervene to preserve the property of the defendant company as a going concern in order to carry out the proposed plan and in order to preserve to the defendant company and to the bondholders, creditors and stockholders the most vital and important asset of the defendant company: to wit, its good will. That the defendant company employs a large amount of skilled labor in its industry, which class of labor is greatly in demand at the present time throughout the country and that if the plant be permitted to shut down, this labor will promptly seek other fields of work, with the result that another important asset of the defendant company will be lost.

"Your complainant further states to the court that the defendant company is also extensively engaged in completing contracts and unfilled orders and that much

of its material to complete these contracts and orders is in the process of manufacture and shipment and that in the event it could not so complete its orders and contracts great loss would be entailed by reason of the lack of value of the unfinished material and damages would result by reason of its failure so to complete its unfilled orders and contracts. * * *

"That as heretofore stated the company is actively engaged in the manufacture of its products, but that it has no means with which to meet the current payroll, nor the means to buy material necessary to carry on its business; that some of the other creditors of the company are now pressing for payment and your complainant as one of the substantial creditors of the company feels that the only way to save the company and preserve its assets for the benefit of all its creditors, stockholders and bondholders, is by the appointment of a receiver by your Honorable Court with proper authority and power to continue the operations of the company as a going concern to collect and preserve its assets and under the direction of the court to carry out its contracts and complete its unfilled orders and if deemed advisable to consummate a reorganization or sale of the company."

And in that bill he asked:

"That a receiver or receivers may be appointed to take possession of, hold, control and manage the property and assets belonging to the defendant, within the jurisdiction of this court, and for that purpose to appoint all necessary agents and attorneys that may be necessary to collect all outstanding accounts and bills receivable, and to prosecute and defend all suits in which the defendant may be interested.

"That the said receiver may be authorized and directed under the order of this court to continue the business of the defendant company as a going concern until the further order of the court in the premises, and to borrow money on receivers' certificates for that purpose."

The defendant appeared on the same day, admitted the allegations of the bill, and consented to the appointment of a receiver, and on the same day the court appointed William A. Riddell a receiver to take charge of and operate the company. Riddell qualified, took charge of the company, and operated it until the following September, when it was shut down. On the day after his appointment, Riddell filed a petition in the case stating that he had no money for the pay roll and that he had on hand unfilled contracts which he could not complete, because he had not either the necessary material or the money with which to buy it. Upon that petition the court passed an order, the material part of which is as follows:

"That the said William A. Riddell, as receiver, and not individually, is authorized and empowered to borrow the sum of five thousand dollars ($5,000.00) and to issue therefor his five (5) certain certificates, as receiver, each in the sum of one thousand dollars ($1,000.00), bearing interest at the rate of six per cent. (6%) per annum from date and maturing on the 15th day of March, 1926; and said certificates are hereby created a first lien on all and singular the funds coming into the hands of said receiver from the operation of said plant and said business of the American Foundry and Manufacturing Company, and on all other assets of said company, not subject to existing liens."

From time to time other similar petitions were filed, and the court authorized the receiver to borrow money on receivers' certificates, until it had authorized and he had borrowed $18,000 on certificates, maturing at intervals between March 15th and October 1st, 1926, inclusive, and all of this money was loaned by the Central Trust Company of Maryland, trustee under the mortgage deed of trust, and also the owner of a part of the bonds secured thereby. The dates and amounts named of these orders, were as follows: December 16th, 1925, $5,000; January 7th, 1926, $5,000; July 3rd, 1926, $3,000; July 30th, 1926, $5,000.

So far as we can learn from the record, which is not very much, during his operation of the plant Riddell received about $160,000, and spent in cash something over $151,000, and at the close of operations he owed various persons who had furnished him with material about $10,262.28, and he had in hand available for distribution $9,331.59.

On October 9th, 1926, he filed a petition asking that he be directed to cease operating the plant (which he had already done) and that the affairs of both the receivership and the company be wound up, and on the same day an order to that effect was passed. Nothing further was done until May 14th, 1927, when the receiver filed a petition alleging the insolvency of the receivership, and asking that the case be referred to the auditor for the statement of a distribution account. Reference was accordingly made, and the auditor directed to "state an account in the above entitled cause allowing court costs and the costs of receivership, commissions having been waived by the receiver, and that distribution of the balance be made in three ways. First, allowing priority to the holders of receiver's certificates. Second, allowing unto holders of receiver's certificates and creditors for materials, etc., a *pro rata* dividend. Third, allowing a preference and priority to creditors of the receivers for raw materials, etc."

In accordance with that instruction the auditor, on June 7th, 1927, filed an account in which the fund was distributed under these three alternative plans: (1) "To the Central Trust Company of Maryland in part payment of receivership certificates, together with interest, upon which there is due $18,726.00, the whole balance of $9,331.59"; (2) "to all creditors of the receiver twenty-five per cent. of their claims"; and (3) "to the creditors of the receiver allowing preference *pro rata* to creditors for materials and supplies to the holders of receivership certificates, distributing to them seventy-five per cent. of their claims." Exceptions were filed to the entire audit by H. B. Mehring Company, a creditor, on the ground that there was some trifling error in

figures and especially to form No. 1 on the ground that its claim should be allowed to it in full; by the Central Trust Company to forms Nos. 2 and 3 on the ground that it was entitled to the whole fund under the receivers certificates; by L. A. Benson Company to forms 1 and 2 on the ground that it and the other creditors were entitled to a preference over the trust company, and by Charles A. Opel, Jr., to the whole audit and especially to form No. 1 because it allowed nothing to him, and to forms Nos. 2 and 3 because of alleged errors in amount. More than a month after these exceptions were filed the receiver filed his report, in which he gave a history of the receivership, and in which in part he said:

"At the outset it was necessary to have working capital to take care of the pay roll to pay the help in order to maintain the proper morale and to purchase sufficient raw materials to carry on manufacturing economically, and to do so your receiver from time to time requested the issuance of receivership certificates, upon which he secured money from the Central Trust Company of Maryland to the extent of the total sum of eighteen thousand dollars ($18,000.00). * * *

"The total receipts of your receiver for the period of operation amounted to $160,047.89—and he paid out for labor and management $79,053.84, and for raw materials, supplies, etc., $72,016.25, in which items of expenditure are included $1,540 paid the Central Trust Company of Maryland, Trustee, for accrued interest on bonds and to the City of Frederick and to Frederick County in the form of taxes $2,684.12."

Upon that record, without testimony or a hearing, the case appears to have been submitted for decree, and on August 12th, 1927, the court entered a final decree ratifying and affirming form No. 3 of the audit, but sustaining the exceptions to form No. 1 and form No. 2. The effect of that was to distribute the entire fund to the general creditors, and to exclude the holders of the receiver's certificates from any participation therein. The present appeal is from that order.

The issues presented by the appeal are whether the Central Trust Company, as a holder of certificates which by the court's order were declared to be "a first lien on all and singular the funds coming into the hands of said receiver from the operation of said plant and business of the American Foundry and Manufacturing Company," is entitled to be preferred to the general creditors of the receivership, whether the entire fund is to be distributed to the general creditors to the exclusion of the Central Trust Company, or whether the fund should be distributed in proportion to their respective claims equally among all the creditors of the receivership.

The learned chancellor who decided the case adopted the second proposition and distributed the whole fund to the general creditors, to the exclusion of the trust company.

The consideration of these issues is to some degree embarrassed by the consideration that it appears from the opinion of the learned and able judge who heard this case below that he was in possession of certain facts which have not been disclosed to this court, and there is some doubt as to the precise effect of the recitals of fact in that opinion. The opinion itself forms no part of the record in this court (*Miller's Equity*, par. 260), since the appeal is not taken from it (*Hobbs v. Payne*, 127 Md. 290), and, although it was held in *Johnson v. Robertson*, 31 Md. 490, that in "matters merely formal" a recital of fact in the body of a decree would, in the absence of "all direct proof" to the contrary, be accepted as true, it was also held there that no such conclusive effect would be given a recital of a jurisdictional fact, even when made in a decree.

It appears from the docket entries in this case that no proof of any kind was offered in connection with the exceptions, but in the opinion it is said that "while the bill of complaint was filed in the name of a general creditor, the proceeding was actually promoted by the bondholders, who secured in advance the consent of the subsequently appointed receiver to serve in that capacity. It has been in practical

purpose a bondholders' receivership. * * * In my opinion the equities in this case strongly support the claims of the supply creditors. Nearly all of them are engaged in business at a considerable distance from this locality, and none of them had the benefit of the opportunities available to the bondholders to know the real condition of the enterprise which was being conducted by the receiver. As between local bondholders who promote and finance a receivership for the conservation of their pre-existing interests, and remote creditors who furnish materials required in the prosecution of such a policy and purpose, I think the latter claimants are justly entitled to be preferred."

In view of the fact that counsel for appellant admits that it is a bondholder, the recital of that fact may be accepted, but since there was no testimony taken below, we deem it beyond our power to accept the other facts recited in that part of the opinion to which we have especially referred, since they form no part of the decretal order and are not embodied therein, but will confine the inquiry to the record before us.

Looking to the record alone it appears that the preference accorded the creditors listed in form 3 is not confined to material and supply creditors, but it includes two claims for insurance and one for water rent, and the claim for insurance was filed by Opel, the complainant in the original bill. It is contended that the general creditors should be preferred to the trust company because it was the real and substantial actor in the proceeding for the appointment of a receiver, but if that is a good reason for excluding the trust company, it is difficult to see why it was not equally as good a reason for excluding Opel, who was not only a stockholder in the company, but who was the actual and only complainant named in the bill. But disregarding that, the question remains, why should the trust company be precluded from any participation in the fund? Appellees answer by saying that it had the litigation instituted to serve its purposes, and that its rights should therefore be subordinated to the rights of

creditors who furnished the material and supplies from which the appellee realized the only funds he has in his possession. That contention treats the orders of court declaring the receiver's certificates a first lien on the receivership funds as nullities, and our first inquiry therefore is, What is the meaning and effect of those orders of the Circuit Court for Frederick County, which declared the receiver's certificates to be a first lien on "all funds coming into the hands of said receiver from the operation of said plant and said business."

The learned chancellor said in his opinion: "The object of that provision was to give the certificates priority * * * upon the net proceeds of the business conducted by the receiver, but it was not designed to prevent the full payment by him of his essential operating expenses." But there is nothing whatever in the order itself to support that limitation, and since, as we have said, we are confined to the record, we must take the order at its face value. When it said that the certificates should be a "first lien" upon "all and singular the funds" coming into the hands of the receiver, it meant that they should be preferred in any distribution of the receivership estate to any claim, except such as were for governmental and judicial costs, taxes and charges, for in our opinion it is open to no other construction. The question then becomes one of power. Did the court in the first place have the power to annex to a loan to a receiver the incident of priority over all other creditors of that particular fund (a) whose claims existed when the loan was made, or (b) whose claims accrued after that, whether they were secured by liens or not?

Although the practice of issuing receivers' certificates is said to be of comparatively recent origin, the overwhelming weight of authority supports the power of courts to authorize their issuance in a proper case (*Ann. Cas.* 1913C, 40, note; 23 *R. C. L.,* page 87; 34 *Cyc.* 296), and to make them a paramount charge at least upon income, assets and funds derived from the operation of the receivership estate (*Ibid.*; *York Mfg. Co. v. Hoblitzell Nat. Bank,* 118 Md. 505), whether the corporation be a public service corporation, or

a mere private business corporation. At the same time it is generally held that courts cannot create a preference in favor of the certificates issued by the receiver of a private corporation over existing liens (40 *A. L. R.* 245), and that view has been adopted in this state, for in *Hooper v. Central Trust Co.*, 81 Md. 591, 593, this court said: "With reference to the receiver's certificates we have no difficulty. When the property of private corporations or of individuals has been placed in the hands of a receiver, all expenses for safe keeping and preservation are properly payable out of the income, if there be any, or if there be none, then out of the proceeds of the corpus of the estate when sold. * * * It would be exceedingly dangerous to concede to a court of equity the power to displace, in favor of receiver's certificates, subsisting liens on the property of private corporations, or of individuals. No mortgage lien would ever be secure if it were liable to be postponed to subsequent obligations created by a receiver. If the power exists at all, apart from the case of a railroad mortgage, there is no reason for denying its applicability to every species of mortgage, and a mortgagee might suddenly discover that what he believed to be an ample security has been utterly destroyed and swept away by intervening liens created subsequently, by an order of the court. We are unable to give our assent to such a doctrine." And it would seem that, in cases where the power has been exercised, good faith and due regard for the honor, credit and dignity of the court creating the lien requires it to enforce it. "Where such certificates are issued, and the court, as in this case, impresses upon them a preferential lien, good faith requires that its promise should be redeemed, unless, perhaps, it be shown that the issue was actually fraudulent. The propriety of the issue of certificates, in a case like the present, has been sustained repeatedly by this court, by the circuit courts of the United States, and by the courts of the states." *Kneeland v. Luce & Co.*, 141 U. S. 491.

Here there is no question of the rights of liens existing at the time the certificates were authorized to affect the corpus of the estate, but it is limited to the administration of assets

accruing as a result of the operation of the factory by the receiver, and, as we have stated, in our judgment the effect of the orders authorizing the receiver's certificates was to make them a preferred charge or lien on those assets within the limits hereinafter stated. But material and supply creditors contend that, as they furnished the material and supplies which created the fund in the hands of the receiver for distribution, they too are lien creditors, having an equity superior to that of the certificate holder. But that is not true, either as a matter of law or as a matter of fact. The money borrowed on the certificates was dedicated to the purchase of raw material, and the payment of labor employed in the manufacture of that material, and it is not apparent why the claim of one who loaned money for those purposes is not equal in equity and dignity to those of persons supplying material directly. *Frock v. Columbian Constr. Co.,* 142 Md. 420. But assuming that, appellees contend, upon the apparent authority of *People's Nat. Bank v. Virginia Textile Co.,* 104 Va. 34, and *Metropolitan Trust Co. v. T. V. & C. R. R. Co.,* 103 N. Y. 245, that the appellant is not entitled to participate at all in the distribution, because it procured the receivership. There is nothing on the face of the record to support that statement, except a recital to that effect in the court's opinion, which appellees contend, upon the authority of *Tome v. Stump,* 89 Md. 264, binds this court. But we do not so read that case. It was dealing with a "recital in a decree," of a matter which could not have happened without the knowledge of the court, while here we are dealing with a recital in an opinion of a matter which could not have been known to the court except through statements which are not in evidence. And even as to a recital in a decree it was said in *Johnson v. Robertson,* 31 Md. 490:

"It has been contended, on the part of the appellee, that this defect of proof is cured by the recital contained in the decree, 'that the order of publication had been duly published.'

"In matters which are merely formal, that occur in the progress of a cause, it has been held that the recital of a

fact in the body of the decree, in the absence of all direct proof to the contrary, will be taken as sufficient evidence of the truth thereof. Thus in *Rigden v. Martin,* 6 H. & J. 407, and in *Scott v. Scott,* 17 Md. 78, the statement in the decree that the cause stood ready for hearing was held sufficient; and in *Fitzhugh v. McPherson,* 9 G. & J. 71, where the decree stated that an order *pro confesso* has been duly served, was considered sufficient of the truth thereof, there being in the record no direct proof to the contrary.

"But those cases have no application to the present. Here the alleged error in the decree does not consist in the omission of any formal or preliminary proceeding in the cause, such as may be cured by presumption, or shown by a recital in the decree. The objection to the decree involves the question of the power and jurisdiction of the court. To bind the non-resident defendants, or to conclude their rights in a proceeding like this, the law requires that notice shall be given by publication as prescribed, and the proof that the law has been complied with must appear in the record."

If the appellees relied upon those statements, and wished to have them considered by the court, they should have supported them by proof.

But aside from that, assuming that the receivership was procured by the appellant, we do not see how that fact could deprive it of the preference given it as a holder of the certificates by the court, for if we accept one recital in the opinion we would also have to accept others, which show that when the orders were passed the court knew that the appellant was expected to cash them, and that it was supposed that funds could be procured from no other source, and we must assume that after the passage of the order all persons dealing with the receiver were charged with notice of the fact that the certificates were a first lien upon all assets received as a result of the receiver's operation of the factory.

If the trust company had loaned the money on a second mortgage, certainly its lien would have been given priority

over creditors who became such after the mortgage. And conceding the power of the court to authorize the issuance of the certificates, there is no reason why the holders thereof should occupy any other or different position than the holder of a lien created by contract. When the first order was passed, the manufacturing company was without money or credit, it is unreasonable to assume that it could have borrowed any more money on its plant, and it was unable to meet its obligations as they accrued. The only possible security it could offer a lender was to pledge the income and assets accruing from the continued operation of the business by the receiver. The court sanctioned that plan, and in its order explicitly directed that receiver's certificates issued to raise money to operate the business should be a first lien on the only property the receiver could pledge, to wit, the funds coming into his hands from the operation of the receivership, and the trust company loaned its money on that assurance. It is not apparent why the trust comany's status should be affected by the consideration that it was interested in preserving the property to protect its bonds, if that was a fact, because the arrangement did not affect any existing creditors, and all subsequent creditors were charged with notice of what was spread upon the public records. If a mortgagee, who because of his interest in the property is willing to risk more money to preserve its value, and who lends his money for that very purpose upon the solemn assurance that it will be a first lien upon all future and additional assets of the company, is told, when he comes to collect it, that the very interest which induced the loan, prevents him from enforcing his lien, there would be few lenders. Such cases as *People's Nat. Bank v. Virginia Textile Co.*, 104 Va. 34, and *Metropolitan Trust Co. v. T. V. & C. R. Co.*, 103 N. Y. 245, which announce the doctrine that, where a receiver is appointed at the instance of and for the benefit of lien creditors and charged with the duty of operating the property for their benefit, all proper charges, expenses, and liabilities, incurred in the administration of the receiver-

ship, shall be a first charge, not only upon the current earnings, but also upon the corpus of the estate, do not seem to be in point, because the controversy here is not between creditors holding liens antedating the receivership and creditors who became such afterwards, but entirely between creditors who became such during the receivership. And the reasoning which subjects mortgaged property to the payment of debts, incurred at the request of the mortgagee for its preservation, in preference to the mortgage claim, does not apply to a case in which the mortgagee furnishes additional money for the purchase of supplies and the payment of labor after a receiver has been appointed, upon the court's express promise that his claim therefor shall be preferred to those subsequent creditors to whom no such promise was made.

In our opinion, therefore, in the distribution of the fund which the receiver holds as a result of the operation of the factory during the receivership, the claims of the appellant based upon receiver's certificates held by it are to be preferred to claims of all creditors accruing after the date of the order authorizing the issuance of the certificates. *Kampman v. Sullivan,* 26 Tex. Civ. App. 308, 63 S. W. 173.

But the record in this case is singularly silent upon all details and particulars of the claims of material and supply creditors to whom the fund in the hands of the receiver was distributed, and it is impossible to tell from it whether they accrued prior to July 30th, 1926, when the last order authorizing the issuance of receiver's certificates was passed, or even whether they accrued prior to the passage of the order of December 16th, 1925, which first authorized the issuance of such certificates, although, as the receiver qualified on that day, it may be reasonably inferred that they accrued after that. But, assuming that some of these material and supply claims existed and were payable at the time some of the orders authorizing the issuance of receiver's certificates were passed, the question is, Had the court the right to subordinate those claims to the payment of certificates to be issued

in future? That it had no right to subordinate claims when secured by contract liens to the lien of the certificates we think is clear, but did that limitation upon its power extend to the claim of creditors having no contract lien, but who would, nevertheless, be preferred to certain other classes of creditors in the distribution of the estate.

That the supply creditors had a lien upon the fund in the hands of the receiver, in the opinion of the author of the opinion and Judge Sloan, is settled by the decision in *Homer v. Balto. Refrigerating etc. Co.*, 117 Md. 425, where it is said: "Finally it is contended that in any event the bond holders are entitled under the decisions in this state, to the extent of their deficiency, to share *pari passu* with the unsecured creditors in the distribution of the profits or earnings made before the intervention of the mortgagees. This is correct when invoked against those who are really unsecured creditors, and would be applicable here if Jones were still an unsecured creditor. He is taken out of that class of creditors (to which for example Mr. Tome belongs as respects his note for money loaned) by the rule giving a current supply creditor an equitable lien for coal furnished to keep the company a going concern, upon his application for that relief, and his equitable lien upon the earnings before intervention by the mortgagee, is as effective against ordinary unsecured creditors as it is against the mortgagee."

In the opinion of a majority of the court, however, the case last cited is not subject to that construction, for reasons to be stated by them, and the material and supply creditors whose claims are under consideration have no lien on the receivership assets equal in dignity to the lien of the holders of the receivers' certificates, but in their opinion all claims evidenced by such certificates are entitled to priority over the claims of labor and supply creditors in the distribution of the receivership assets, whether such claims accrued before or after the issuance of the certificates. In that conclusion, Judge Sloan and the author of this opinion do not concur, because, assuming upon the authority of that case that those who furnished supplies were lien creditors, their claims could

not properly be deferred to the payment of certificates issued under an order passed upon an *ex parte* application by the receiver, without their consent and without notice to them. 23 *R. C. L.*, page 89; *Balto. Bldg. & Loan Assn. v. Alderson,* 90 Fed. 147.

In the order appealed from the chancellor ratified the allowance of costs and expenses with respect to which no exceptions were filed; and sustained the exception of Edwin C. Buch, so that his claim for labor done for the foundry company within three months before the appointment of the receiver was allowed in full; and reserved the question of the allowance of county and municipal taxes, aggregating $2,684.12, and the amount of accrued interest paid on the bonded indebtedness, as preferred claims for final determination in the further accounting to be made in the proceedings. It appears that the claim of Buch was conceded, and, since the facts contained in the record are not sufficient to enable the questions reserved to be disposed of on appeal, and no objection has been made to the costs and expenses included in the order of ratification, the only error of the chancellor was in respect to the ratification of the method of distribution followed in form No. 3 of the auditor's account. Therefore, the order appealed from will be affirmed in all respects, except in regard to the distribution of the fund in accordance with form No. 3, and, for the error in not decreeing a distribution of the funds remaining to the holder of the receivership certificates because of the preferential lien givn them in the order authorizing their issue, the order of the chancellor must be reversed in part, and the cause remanded for further proceedings in conformity with this opinion.

> *Order affirmed in part and reversed in part, and cause remanded for further proceedings in accordance with the views expressed by the court, the costs of appeal to be paid from the fund in the hands of the receiver.*

PARKE, J., delivered the following opinion, in which BOND, C. J., PATTISON, and DIGGES, JJ., concurred; and in which ADKINS, J., concurred on the facts of the instant case.

It would seem that the reasons for the writer's only difference with the conclusions expressed in the opinion of Judge Offutt, in which Judge Sloan concurred, should be stated.

The receiver in the instant case was appointed with authority to continue the operation of the business of a failing corporation, which was not engaged in any public service. On the day of the decree the receiver was empowered by an order of the chancellor to borrow the sum of five thousand dollars, and to issue therefor five receiver certificates, bearing interest and payable at a fixed maturity. The order specifically provided that the "certificates are hereby created a first lien on all and singular the funds coming into the hands of said receiver from the operation of said plant and said business of the American Foundry and Manufacturing Company, and on all other assets of said company, not subject to existing liens." In every one of the four orders of court passed successively on December 16th, 1925, January 7th, July 3rd, and July 30th, 1926, the identical provision cited is found.

The affairs and property of the involved corporation were in the custody of the law, and the faith of the court was pledged to those who became the holders of these certificates according to their plain import. Every one dealt with the receiver charged with the knowledge that the receiver was but the arm of the court, subject to its direction and control, and without power to act except upon its authorization. Any one so dealing did so at his own risk with respect to the power of the court to create priority among those furnishing money, material, or labor during the administration. Consequently, no injustice is done him if the exigencies of a receivership required the issuance of certificates with a lien upon receipts or property in the custody of the court. And, in the language of the Supreme Court of the United States in *Kneeland v. Luce,* 141 U. S. 508, "Where such certificates are issued, and the court, as in this case, impresses upon them a preferential lien, good faith requires that its promise should

be redeemed, unless, perhaps, it is shown that the issue of the certificates was actually fraudulent." So, where such certificates are issued successively, but in pursuance of a common purpose, and .with a like provision with respect to priority, and every one for a valuable consideration, they are all to be treated as being of equal dignity and none to have any preference over another, but every certificate of any issue to have priority according to its terms over the claims of those who have dealt with the receiver as general creditors. In short, the creditors holding the certificates giving a preferential lien would constitute one class, and the general creditors of the receivers not holding such certificates would form a second class; and the claims of every member of each class would share equally in the fund available for such class. This method of distribution assures to the member of each class the application of the doctrine that equality is equity, and prevents any possible repudiation of the court's express promise of a preferential lien.

If, during the receivership, A advanced money to meet the pay roll, B supplied coal, and C raw material, every one would share equally according to his claim, because there would be no priority among them, but if X, Y and Z held receivership certificates which the court had declared to be a prior lien on the receipts of the receivership, then X, Y, and Z would be paid in full, if the receipts were sufficient, and the claims of A, B and C would be paid *pari passu* out of the residue of the receipts, if those were insufficient to pay in full. By this method equality is assured among the members, respectively, of each of the two classes of creditors, and the promise of priority by the court is fulfilled. But if the receipts were not enough to pay both classes in full, and the two classes shared in the whole fund proportionately to their respective claims, then the promise by the court of a preferential lien to X, Y, and Z would be repudiated and the difference between preferred and unpreferred creditors would arbitrarily be ignored. Again, still assuming a deficit, if X and Y held receivership certificates issued on December 16th, 1925, and Z one issued on January 7th, 1926, and B had

furnished coal after December 16th but before January 7th, and, afterwards B supplied another lot of coal and C a quantity of iron, then, if B's claim for coal, which he had sold between the dates of the issue of the two certificates, be subordinate to the first certificate, but either preferred to or equal with the second certificate, it would follow that the claim for the second lot of coal delivered by B and the iron purchased of C would be postponed not only to both issues of certificates, but also to the demand of B for his first delivery of coal. Thus it would happen (a) that the pledge given by the chancellor that the certificates would be prior liens would be violated either by deferring the second certificate to the claim of B for his first delivery of coal or placing this claim on an equality with the second certificate for the purpose of participation *pari passu* with it in the distribution; and (b) that equality among the creditors of the same rank would be destroyed, since B's debt for the first load of coal would take precedence in distribution over B's item for the second load of coal and C's demand for the iron.

It is unnecessary to multiply these illustrations, which demonstrate that to give priority when it is promised within the power of chancery is the only method which at once maintains the integrity of the court's agreement and assures to those holding business transactions with the receiver the greatest measure of equality among receivership creditors, accordingly as they are of one class or fall into classes of preferred and unpreferred creditors. This view is in harmony with *York Mfg. Co. v. Hoblitzell Nat. Bank,* 118 Md. 505, 509, 511, and is supported by *Lewis v. Linden Steel Co.,* 183 Pa. 248; 2 *Tardy's Smith on Receivers* (2nd Ed.), secs. 569, 575, 577, 578, p. 1640, n. 1; *Lockport Felt Co. v. United Box etc. Co.,* 74 N. J. Eq. 686, 694, 696; *Porch v. Agnew Co.,* 66 N. J. Eq. 232.

Nor is *Homer v. Balto. Refrigerating etc. Co.,* 117 Md. 411, in any way opposed to the position taken in this opinion. This case did not involve the preferential lien created by receiver's certificates, but the question whether, under the circumstances that after default but prior to a receivership

of a mortgaged property and while the financial affairs of its corporate owner were in charge of representatives of the bondholders and the continuance of the operation of the corporation was for the benefit of the holders of the bonds which were secured by a mortgage or deed of trust on the real and leasehold property of the corporation and their rents, issues and profits, the income arising from this operation should, when collected after the receivership, be appropriated to the payment of the mortgage indebtedness or to general creditors of the corporation rather than to one supplying coal to enable the business to be carried on for the benefit of the bondholders during the one month immediately preceding the receivership. The mortgage indebtedness was a lien upon both the corporate real and leasehold property and the rents, issues, and profits therefrom, and the mortgage deed conferred, after default, the right upon the trustee to enter upon and operate the plant "receiving all income and revenue and, after deducting the expenses of use and operation * * * apply the remaining net income and revenue, without preference, priority or distinction to one bond or another, to the payment of the bonds secured by the mortgage in the method and order prescribed therein." The mortgage trustee had not entered into actual possession of the property nor had a demand been made for the rents, issues, and profits until the receivership, so the court, distinguishing between rents and income or profits, held that the gross income earned before the receivership, but later collected through the receivership, would not be impressed with the mortgage lien and that, while as against unsecured creditors the bondholders would be entitled to the extent of their deficiency to share *pari passu* with the unsecured creditors in the distribution of the profits or earnings made before the intervention of the mortgagee, the rule did not apply as against the coal dealer, as he was not an unsecured creditor, the court saying:

"He is taken out of that class of creditors (to which for example Mr. Tome belongs as respects his note for money loaned) by the rule giving a current supply creditor an

equitable lien for coal furnished to keep the company a going concern, upon his application for that relief, and his equitable lien upon the earnings before intervention by the mortgagee, is as effective against ordinary unsecured creditors as it is against the mortgagee."

This broad statement is not of general application, but is limited by its context and the subject matter of the opinion to a special class of creditors of a particular kind of corporate or individual enterprise, and, unless both the creditor and the enterprise possess the elements prescribed, the rule announced has no application. The case of *Homer v. Balto. Refrigerating etc. Co., supra,* was an application of a doctrine which, in general terms and without all its qualifications, may be stated to be that, in the case of a public or *quasi* public service corporation or enterprise, the current expenses, which are incurred in the ordinary course of its business, and are necessary for its maintenance, and arise within a reasonable time before a receivership, are given preference over recorded liens and general unsecured creditors in the distribution of income which was earned, but not paid, before the receivership. Without reference to other conditions for the application of this rule, it is necessary that the claim of the creditor be for current expenses and against a public or *quasi* public service corporation. The doctrine is an exception to the general rule of the common law that all unsecured creditors are entitled to have the fund applied *pro rata* to the satisfaction of their several claims without preference or priority. As was said in *Warburton v. Perkins,* 150 Md. 304, 310, "The severity and rigidity of that rule has been modified, however, in cases where the court has been called upon to deal with the claims of creditors who have furnished current supplies to a corporation dedicated to a public service, to the extent that it has given such claims a preference over other unsecured claims in the distribution of funds arising from the collection of service charges during the receivership." And, according to this decision, *Homer v. Balto. Refrigerating etc. Co., supra,* extended the rule "to all *quasi*

public service corporations." Page 311. The tendency of the courts has been to qualify rather than to enlarge the scope of this principle, and no case in Maryland supports its application to a corporate or private enterprise which is not affected by a public service or use. In *Homer v. Balto. Refrigerating etc. Co., supra,* the corporation was a heating and refrigerating company which used the beds of the streets of Baltimore under a franchise therefrom for distributing through mains and pipes laid under the street the heat it generated to supply the public, and so it was held engaged in a public service, and the creditor, having supplied it with fuel for one month prior to the receivership in order to enable it to carry on its business, was a current supply creditor, and therefore all the essentials were present for the application of the exception to the general rule. As the corporation in the instant case was one of a wholly private nature, the language quoted from *Homer v. Balto. Refrigerating etc. Co., supra,* has no application.

The certificates in the instant case were authorized by the chancellor for the purpose of preserving the property and good will of the involved corporation for the general benefit of all parties in interest, but all the facts upon which he acted do not appear from the record so as to bring them before us for consideration; and, manifestly, what we are about to say is not in any sense a comment upon what was done in the cause before the lower court, but is simply a repetition of certain principles for guidance in future litigation.

In the case of corporations or industrial enterprises which are engaged in private business, receivership certificates, especially those which give a preference, should rarely be resorted to, and then only after careful consideration and a reasonable assurance of their payment; and, if issued, the chancellor, through reports from the receiver and other available sources, should keep in close contact with the affairs of the receivership, in order that the certificates or their proceeds be properly applied, and that the receiver assume no obligations beyond available present or prospective resources

when reasonably assured. The outcome of a venture in the operation of a private business through a receiver is so precarious that great caution in its authorization, and unremitting vigilance in its supervision, should characterize the action of the court. It should be added that the propriety of the issuance of receivership certificates is a matter for review, and must depend upon the facts and circumstances of each particular case. 2 *Tardy's Smith on Receivers* (2nd ed.), sec. 561.